[Civil No. 812. Filed Oct. 31, 1903.]

[74 Pac. 48.]

PHOENIX LIGHT AND FUEL COMPANY, Defendant and Appellant, v. THOMAS D. BENNETT, Plaintiff and Appellee.

1. NEGLIGENCE—WHAT CONSTITUTES—ESSENTIAL INGREDIENT.—An essential ingredient to any conception of negligence is that it involves the violation of some legal duty—a duty to take care of the person or property of another.

2. SAME—REASONABLE CARE.—Where a person, proceeding in a lawful business, exercises reasonable care, the law does not make him an insurer against the consequences of his actions which reasonable care and foresight could not have prevented.

3. SAME—ELECTRICTY—WIRING—INSULATION—MUST BE SUFFICIENT TO PROTECT FROM CURRENT CARRIED FROM DEFENDANT'S PLANT—BUT NOT TO PROTECT FROM ELECTRICITY HAVING ITS ORIGIN IN THE CLOUDS OR ATMOSPHERE.—Where plaintiff's house was destroyed by fire during a violent electrical storm, and plaintiff brought suit against defendant and electric light company, making the gravamen of his action the negligence of defendant in failing to properly insulate the wire which "it placed through the window casement of plaintiff's house" for the purpose of conveying to lights in said house the current generated by said defendant, the court erred in submitting to the jury any question as to the defendant's liability for a failure to insulate these wires against electricity having its origin in the clouds or atmosphere.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. Edward Kent, Judge. Reversed.

The facts are stated in the opinion.

Chalmers & Wilkinson, and Herndon & Norris, for Appellant.

Defendant's motions to instruct the jury to bring in a verdict for defendant under the evidence should have been granted by the court. When there is no evidence in the case to support the plaintiff's theory, the rule of law is that the jury should be so instructed, and judges are no longer required to submit a question to a jury merely because some

evidence has been introduced by the plaintiff, unless the evidence be of such a character that it would warrant the jury in finding a verdict for the plaintiff. *Schuylkill and D. Improvement etc. Co.* v. *Munson,* 14 Wall. 442, 20 L. Ed. 867; *Root* v. *Fay,* 5 Ariz. 19, 43 Pac. 527.

Where the verdict of a jury is palpably against the evidence, it is proper to invoke this rule. *Slate Creek Iron Co.* v. *Hall,* 11 Ky. Law Rep. 456, 12 S. W. 580.

There can be no doubt in regard to the rule that where damages are attempted to be recovered for an injury, the damages must result as the natural and proximate consequence of the wrongful act; and we admit the rule of law that one shall be held liable for those consequences which might have been expected as the natural result of his conduct, but not for those he could not have foreseen, and was therefore under no obligation to take into consideration.

The supreme court of the United States in *Insurance Co.* v. *Tweed,* 7 Wall. 44, 19 L. Ed. 65, said: "One of the most valuable *criteria* furnished us by the authorities is, to ascertain whether any new cause intervened between the effect accomplished and the alleged cause. If a new force or power has intervened by itself sufficient to stand as the cause of the mischief, the other must be considered as too remote."

The same doctrine is announced in *Fent* v. *Toledo etc. Ry. Co.,* 59 Ill. 349, 14 Am. Rep. 13; *Toledo etc. Ry. Co.* v. *Muthersbaugh,* 71 Ill. 572; *Schmidt* v. *Mitchell,* 84 Ill. 109, 25 Am. Rep. 446; *Scheffer* v. *Railroad Co.,* 105 U. S. 249, 26 L. Ed. 1070; *Haile's Curator* v. *Texas and Pacific Ry. Co.,* 60 Fed. 557, 9 C. C. A. 134, 23 L. R. A. 774; *Pullman Palace Car Co.* v. *Barker,* 4 Colo. 344, 34 Am. Rep. 89; *Bosch* v. *Burlington etc. R. R. Co.,* 44 Iowa, 402, 24 Am. Rep. 754.

"The law is not so absurd as to assume to hold any one responsible upon the ground of negligence for not doing that which he was practically under the circumstances unable to do." *Michigan Cent. R. R. Co.* v. *Burrows,* 33 Mich. 6.

In determining what is the proximate cause, the true rule is that the injury must be the natural and probable consequence of the negligence. There was no proof, nor any attempt to prove, that lightning was any more apt to enter the wires of the defendant without the clay bushing or rubber tubing than with it. See *Seale* v. *Gulf etc. Ry. Co.,* 65 Tex.

274, 57 Am. Rep. 602; *Brandon* v. *Gulf City etc. Co.,* 51 Tex. 121.

Defendant's contention was that it could only be held liable for damages resulting from an injury caused by its negligence, and if the injury was caused by a current of electricity coming in contact with the plaintiff's house through defendant's wires, that said electricity must have come from defendant's plant.

The plaintiff contended that defendant was liable regardless of where the current of electricity came from.

The court instructed the jury upon these two contentions. In our view of this case these contentions were irreconcilable, and the instructions given by the court at the request of the respective parties and of his own motion were conflicting and erroneous, and calculated to and did mislead the jury. *Price* v. *Hannibal etc. Ry. Co.,* 77 Mo. 508; *McLean County Bank* v. *Mitchell,* 88 Ill. 52; *Hoben* v. *Burlington etc. R. R. Co.,* 20 Iowa, 566.

A. C. Baker, and Alfred Franklin, for Appellee.

The doctrine of ''res ipsa loquitur'' should be invoked in this case. On this proposition we cite the following cases as being strictly analogous to the one at bar in which this doctrine has been sustained. *Aycock* v. *Raleigh etc. Ry. Co.,* 89 N. C. 321; *Alton etc. Co.* v. *Foulds,* 81 Ill. App. 332; Ray on Negligence of Imposed Duties, 145; Whittaker's Smith on Negligence, 422, 423; *Haynes* v. *Raleigh Gas Co.,* 114 N. C. 203, 41 Am. St. Rep. 786, 19 S. E. 344, 26 L. R. A. 810.

A wire negligently allowed by an electric company to remain out of place, which, becoming electrified from the atmosphere, causes injury either to the person or property of another, imposes a liability upon the company for such damage. *Paine* v. *Electric etc. Co.,* 64 App. Div. 477, 72 N. Y. Supp. 279; *Southwestern Tel. etc. Co.* v. *Robinson,* 50 Fed. 810, 1 C. C. A. 684, 16 L. R. A. 545; *Jackson* v. *Wisconsin Tel. Co.,* 88 Wis. 243, 60 N. W. 430, 26 L. R. A. 101.

''It is clear that the business of maintaining and operating a telephone line is one that requires special knowledge and skill in the construction, inspection and repair of the line and instruments, and in the use of known and approved devices, if any there be, to guard against harmful effects to persons or

property from electricity which may be conducted over the line and into the instruments, and the defendant in engaging in the business and in contracting to place and maintain its instruments in connection with its wires for the use of its patrons in dwellings and other buildings, in the absence of stipulations to the contrary, is deemed to have undertaken to possess and exercise such knowledge and skill." *Griffith* v. *New England Tel. etc. Co.*, 72 Vt. 441, 48 Atl. 643, 52 L. R. A. 919, citing *Brown* v. *Edison etc. Illuminating Co.*, 90 Md. 400, 78 Am. St. Rep. 442, 45 Atl. 182, 46 L. R. A. 745; *McKay* v. *Southern Bell Tel. Co.*, 111 Ala. 337, 56 Am. St. Rep. 59, 19 South. 695, 31 L. R. A. 589; *Griffin* v. *United Electric Light Co.*, 164 Mass. 492, 49 Am. St. Rep. 477, 41 N. E. 675, 32 L. R. A. 400; *Perham* v. *Portland etc. Elec. Co.*, 33 Or. 451, 72 Am. St. Rep. 730, 53 Pac. 14, 40 L. R. A. 799.

In the consideration of the motion to make definite, as well as the principal contention,—to wit, as to whether the fire originated from electricity of appellant's power plant or from the atmosphere,—it is suggested by appellee that this pleading falls within the familiar rule that a plaintiff is not bound to plead facts which are peculiarly within the knowledge of the defendant. *Louisville etc. Ry. Co.* v. *Crunk*, 119 Ind. 542, 12 Am. St. Rep. 443, 21 N. E. 31; *Burnham* v. *Milwaukee*, 69 Wis. 379, 34 N. W. 389; *Louisville etc. Ry. Co.* v. *Jones*, 83 Ala. 376, 3 South. 902.

DAVIS, J.—This is an appeal by the defendant company from a judgment rendered against it in an action for damages for alleged negligence, which, it was claimed, resulted in the destruction of the plaintiff's property. The complaint upon which the action was founded, after stating the residence of the parties and the corporate character of the defendant, alleged, "that, at all the times hereinafter mentioned, defendant was engaged in the business of supplying electricity, by virtue of a public franchise, to its certain consumers and patrons in and near the city of Phœnix, and of wiring and equipping the houses and buildings of its said patrons and consumers for the purposes of lighting such houses with electricity; that on or about the first day of April, 1899, the defendant, in changing the wires in the house of plaintiff, on North Second Avenue, near the city of Phœnix, negligently,

wrongfully, and willfully caused the wire conducting electricity from its plant to plaintiff's house to be placed through the window casement of plaintiff's said house, without insulating the same in any manner whatsoever; that wholly by reason of said negligent placing of said wires as aforesaid, and without any knowledge, consent, or fault of plaintiff, said wire became charged with electricity on or about the eighteenth day of July, 1899, and set fire to and wholly destroyed plaintiff's said house, and furniture and effects of plaintiff therein, being of the value of five thousand dollars, to plaintiff's damage in the sum of five thousand dollars; that, at all the times herein mentioned, plaintiff was a purchaser and consumer, for hire, of the electricity furnished by defendant." A motion to require the plaintiff to make his complaint more definite and certain, by stating how and whence "said wire became charged with electricity," was denied, and a demurrer to the sufficiency of the complaint was overruled. The further answer of the defendant was a general denial of the allegations of the complaint, and upon the issues thus made the case was tried before the court and a jury, resulting in a verdict and judgment in favor of the plaintiff for the sum of $3,404.50.

The evidence adduced on the trial showed the following facts: That the house of plaintiff at Phœnix, Arizona, was occupied by himself and family as a residence. It was an ordinary story-and-a-half brick house, which he had built during the latter part of the year 1896. At the time the house was built, it had been wired for the purpose of electric lighting by persons not connected with the defendant. That the first attachment with the defendant's plant was made at the front of the house, the wires entering through an upper window. The wiring remained in that condition for about two years. In the spring of 1899 the defendant changed its pole line to the alley back of the house, and then the wires connecting the defendant's plant with the plaintiff's house were changed to the back part of the house. The defendant placed its wires through the casement of a garret window at the rear end of the house in making the new connection. This change was without the knowledge of the plaintiff until some time after it had been made, but it appears never met with any protest from him. On the eighteenth day of July,

1899, at about nine o'clock in the evening, the house was burned, together with a large part of its contents. A thunderstorm had been prevailing on that evening. The plaintiff was just going to bed, when he noticed a glimmer on the stairway. He ran upstairs, and saw that there was a fire in the window casement on the south side of the window, which he made ineffectual efforts to extinguish. About two hours before this the electric lights were on in the plaintiff's house, and he was reading by the same. Suddenly the lights went out—"just popped off." The plaintiff went upstairs, examined the wires in the part of the house where the connection had been made by the defendant, and examined the entrance of the wire into the house to see if it had come apart. He observed the condition of the wire at that point, and the insulation. He found the wires connected. The junction with the house wiring was on the inside of the upper story. This part of the house was not completely floored. The wires entered the house through auger-holes in the window casement. There were no crockery tubes or clay bushing where the wire penetrated the casement. In the unfloored space between the casement and the point at which it passed under the floor, there was two or three feet of slack in the wire. Plaintiff could not see that which passed through the casement, but such wire as was visible to him was in a damaged condition. It was frayed, and the insulation was loose upon it. It was not held tight at the point of entrance. It was an old wire, and had been in that condition from the time it was put there. Plaintiff had previously noticed this wire, and the loose way in which it was fixed up, but never so closely as on this occasion. There were porcelain spools on the eaves of the house, from which the wires ran into the window, and similar insulators along the garret joists, on the inside. There was no fuse-box at the window. The plaintiff used lamplight after the electric lights went out, and resumed his reading downstairs. When he first saw the fire, it was in the window casement, immediately surrounding the wires. The blaze was two and one half feet in length, about four to six inches above the wires, and some distance below. The plaintiff was at the time hiring the use of electricity from the defendant for lighting purposes. On the morning after the fire the employees of the defendant took down the wires in the

vicinity of the plaintiff's house, and found them to be in fairly good condition, except that they were burned for a distance of twelve or fourteen feet from the building. The transformer, near by, which controlled the current to the plaintiff's house, was found to be uninjured. The usual and ordinary strength of this current was one hundred and four volts. Evidence was introduced as to the value of the property. A number of witnesses also testified as to the condition of the night; that a severe electrical storm was raging, during which there was a peculiarly bright flash of lightning, followed by a heavy clap of thunder, shortly after which they noticed fire coming from the roof of plaintiff's house. There was expert testimony to the effect that electric light companies make no attempt to insulate their wires against lightning, and that it is not practicable to do so.

Numerous errors are assigned by the appellant, but those which we consider to be fully determinative of this appeal are predicated upon the instructions which were given to the jury. The gravamen of the complaint in this case was the defendant's failure to properly insulate the wire which it "placed through the window casement of plaintiff's house." The peculiar facts of the case afforded an unusual opportunity for theorizing upon the cause of this fire. It was a theory of the plaintiff that the rain blown in at the auger-holes of the window casement had wetted the woodwork and wires, creating what is technically termed a "short circuit," and setting fire to the woodwork. The evidence cannot be said to sustain this theory, however, except upon the assumption that the voltage was greater than that of the ordinary current which passed over these wires from the defendant's plant for his lighting purposes. But the plaintiff contends that it was equally the duty of the defendant to so insulate these wires as to protect against an electrical current which might have been induced from the clouds or atmosphere. Upon this latter proposition, sharp issue was made at the trial; the position of the defendant being that it was only required to install and maintain its wires for safely carrying the current from its plant for the lighting of the plaintiff's house, and that the plaintiff must prove that his loss was occasioned by the electric current which passed from defendant's plant, through said wires, into his house. The instructions of the court upon

this point are complained of as being conflicting and erroneous. From the charge which was given, we quote the following: "The court instructs you that it does not make any difference where this electricity came from. If the electricity came in and caused the fire by reason of something about these wires, and you find that the defendant was negligent in putting in these wires and maintaining them, and that such negligence caused the fire, it does n't make any difference where the electricity comes from. But on the other hand, I also charge you that if the wires were sufficient to maintain the current of electricity from the plant of defendant, and such current as could be reasonably expected to come in through those wires to light the house, then the defendant is not responsible by reason of any increased voltage on those wires that might come from a stroke of lightning, provided the wires were reasonably placed so as to carry the current that was used in lighting the house. The jury are instructed that defendant is required to insulate its wires so as to protect property through which said wires pass, against danger which may arise from a current of electricity generated by defendant's plant, and passing through said wires, and not from a current generated elsewhere and from other agencies, unless such other agencies were with the consent of defendant." It appears from the record that at the conclusion of the evidence the parties consented that the court should deliver its charge to the jury after the argument, but that the instructions requested by the respective parties were settled by the court in advance, so that they could be used in the argument. That the trial judge marked as "Given," and appended his name in the manner required by statute to, the following instruction, which had been requested by the defendant: "You are further instructed that if, in weighing the testimony in this case, you are unable to decide therefrom whether the fire was caused from the electric current generated by defendant's plant through said wires, or from lightning either passing through said wires, or striking the house directly, and in another part of the house than through the wires, that you should find your verdict for the defendant. It is the duty of the plaintiff, by a preponderance, to prove that the loss was occasioned by the electric current passing from defendant's plant through said wires into the house, and this proof must be made by a

preponderance of the evidence; and, if plaintiff fails to make this proof, your verdict should be for the defendant." Counsel for the defendant made use of this instruction in their argument of the case, and discussed the same before the jury. On the completion of the argument, the court delivered its charge to the jury, and, in so doing, modified this particular instruction by adding thereto and giving in connection therewith the words, "except as I have said before, it does not make any difference where the power came from—whether of clouds and electricity, or from the plant." Considering the very slight foundation in the evidence for the claim that any current was on these wires from the defendant's plant at the time of the fire, it is readily apparent how prejudicial might have been this modification after the argument was closed. But we think that the chief vice of the court's charge was in the submission to the jury, in this case, of any question as to the defendant's liability for a failure to insulate these wires against electricity having its origin in the clouds or atmosphere. An essential ingredient to any conception of negligence is that it involves the violation of some legal duty which one person owes another—a duty to take care for the safety of the person or property of the other. This duty may be assumed by contract, or it may be imposed by implication of law. Where a person, proceeding in a lawful business, exercises reasonable care, the law does not make him an insurer against those consequences of his actions, which reasonable care and foresight could not have prevented. The law justly ascribes such consequences to inevitable misfortune or to "the act of God," and leaves the harm resulting from them to be borne by him upon whom it falls. 1 Thompson on Negligence, 2d ed., sec. 14. In the conduct of an electric lighting business, the defendant was engaged in handling a most dangerous agency, and, in the generation and distribution of electricity from its plant to its patrons, was unquestionably bound to exercise the highest degree of skill and care for the protection of life and property. The duty thus imposed clearly required that the wires which the defendant "placed through the window casement of plaintiff's house" would be sufficiently insulated to protect said house against injury from any current carried on them from the defendant's plant. This duty did not, however, extend so far as to require

the insulation of these wires in a manner to protect against injurious consequences of a lightning stroke, for the evidence shows that it was not practicable to insulate them against lightning, and there is nothing in the record which indicates any assumed or implied obligation of this character. And what we have here said as to lightning must, it seems to us, under the facts of this case, be equally applicable to any induced current of electricity having its origin in the clouds or atmosphere, because there is absolutely nothing in the evidence from which the strength of such a current could be estimated. While the learned trial judge, in other portions of his charge, apparently intended to so declare the law as to relieve the defendant from liability for the consequences of a current of greater voltage than that which would be carried on these wires for the lighting of the plaintiff's house, if the wires were sufficiently installed and insulated for the latter purpose, we feel that, in submitting to the consideration of the jury in this case any question of negligence based upon the defendant's failure to insulate against a foreign current of electricity, he was inviting them into the realm of speculation, in which conjecture, and not evidence, must guide them, and that the jury may readily have been misled thereby, to the prejudice of the defendant.

For the errors pointed out, the judgment will be reversed, and the case remanded to the district court for a new trial.

Sloan, J., and Doan, J., concur.