CASE 74.—ACTION BY VIOLA M. SMITH AGAINST THE SOUTHERN RY. CO. IN KENTUCKY FOR VALUE OF LOST FREIGHT.—May 10.

# Southern Ry. Co. in Kentucky v. Smith

Appeal from Woodford Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Affirmed.

1. Carriers—Carriers of Freight—Liability—A carrier received freight for transportation, though it had no trains scheduled to carry it until the following day. The shipper knew the facts, and understood that the goods would be stored in the depot until the following day. Held, that the carrier while holding the goods at the depot was liable as a carrier, and not as a warehouseman.

2. Trial—Right to Open and Close—Where, in an action against a carrier for the loss of freight, the answer controverted the allegations of the petition, and alleged the loss was through an act of God, and the reply denied the affirmative allegations, and the carrier, after the jury had been sworn, filed an amended answer, in which it withdrew the denials of the answer, except those as to the value of the goods, the court properly refused its motion to adjudge it the burden of proof, and the concluding argument to the jury.

3. Carriage of Freight—Liability for Loss—Act of God——To exempt a carrier from liability for loss of goods by reason of an act of God, it must be free from negligence.

4. Same—Question for Jury—In an action against a carrier for

loss of goods stored in a depot, awaiting transportation, evidence examined, and held that the question whether the loss was the result of an act of God, relieving the carrier from liability, was for the jury.

WALLACE & HARRIS for appellant.

HUMPHREY & HUMPHREY of counsel.

### SUMMARY AND AUTHORITIES.

1. The trial court erred in striking out certain portions of appellant's answer.

2. The liability of a railroad company as common carrier of goods delivered to it attaches only when the duty of immediate transportation arises. (London & L. Fire Ins. Co. v. Rome W. & O. R. Co., 39 N. E. Rep., (N. Y.), 79; St. Louis I. N. & S. Railway Co. v. Murphy, 30 S. W. Rep., (Ark.), 419, 4th Cyc., 414; 1st Hutchison on Carriers (3rd ed.), sec. 112 and ca. ci.)

3. The trial court erred in refusing to place the burden of the proof on the appellant and to give it the conclusion in the argument.

(a) Every material allegation of the pleading must, for the purpose of the action, be taken as true unless specifically traversed excepting those which must be proved, though not traversed.

Allegations concerning value or amount of damage, not accompanied by an allegation of an express promise, or by a statement of facts showing an implied promise to pay such value of damage. Such allegation, so accompanied need not be proved, unless traversed. (Civil Code, subsec. 4, of section 126.)

(b) A prima facie case against a common carrier for loss is made out when the shipper shows a delivery to the carrier, and the failure on its part to deliver to the consignee. (Louisville &c. Railroad Co. v. Murphy, 15 Ky. Law Rep., 445; Adams Express Co. v. Crawford, 8 Ibid, 619.)

(c) The party holding the affirmative of an issue, must produce the evidence to prove it. Civil Code, section 525.)

(d) The burden of proof in the whole action lies on the party who would be defeated, if no evidence were given on either side. (Civil Code, section 526; Funk, &c. v. Proctor, &c., 22 Ky. Law Rep., 1728; Walling v. Eggers, &c., 25 Ibid, 1563; Ashland & Catlettsburg Street Railway Co. v. Hoffman, By &c., 26 Ibid, 778; Frankfort & Versailles Traction Co. v. Marshall, 98 S. W.

vol 125—42.

Southern Ry. Co. in Kentucky v. Smith.

Rep., (Ky.) 1035; Mattingly v. Shortell, 27 Ky. Law Rep., 426; Southern Ry. Co. v. Steele, 94 S. W. Rep., (Ky.) 653; Chaplain & Bloomfield R. R. Co. v. Nelson county, 77 S. W. Rep., (Ky.) 377.)

(e)  Where the burden of proof is on a party to a suit, such party is entitled to the conclusion in the argument, and it is a reversible error to deny him this right.  (Civil Code, subsec. 6 of section 317; O'Connor v. Henderson Bridge Co., 95 Ky. Law Rep., 633; Tarvin & Hall v. Timberlake, &c., 18 Ky. Law Rep., 807; Ashland & Catlettsburg Street Railway Co. v. Hoffman, supra.; Mattingly v. Shortell, supra, and ca. ci)

(f)  The court erred in refusing to peremptorily instruct the jury to find a verdict for appellant.

Where the defence to a suit is a plea in avoidance, and the evidence clearly sustains it, there being no conflict of evidence upon the point, there is nothing for the jury to decide, because upon that point there is no fact at issue.  The matter. is reduced to a pure question of law, which is for the court always, and .the jury should be instructed peremptorily to find for the defendant.  (L. & N. R. R. Co. v. Mounce's Admr., 28 Ky. Law Rep., 933; Standard Oil Co. v. Eiler, 110 Ky., 209; Bush v. Grant, 22 Ky. Law Rep., 1766; L. & N. R. R. Co. v. Breeden, 13 Ky. Law Rep., 397; Greenwood v. McHenry, 14 Ky. Law Rep., 336; Henderson Trust Co. v. Stuart, 108 Ky., 167; City of Lancaster v. Walter, 25 Ky. Law Rep., 2189.)

(g)  The verdict and the judgment rendered thereon are flagrantly against the evidence.

4.  Where the verdict returned by a jury is palpably and flagrantly against the evidence, the court should se! the verdict aside, even though there might have been a scintilla of testimony that would take the case to the jury.  (L. & N. R. R. Co. v. Carter, 23 Ky. Law Rep., 2017; L. & N. R. R. Co. v. McGeary's Admr., 104 Ky., 509; L. & E. M. Co. v. Gilliland, 24 Ky. Law Rep., 2081; L. & N. R. R. Co. v. Hall, 115 Ky., 567.)

FIELD McLEOD for appellee.

POINTS AND AUTHORITIES.

1.  The lower court was correct in striking out certain portions of appellant's answer.  (St. L. I. M. & S. Ry. Co. v. Murphy, 30 S. W. Rep., 419; Cyc. vol. 4, p. 414; 1 Hutchinson on Carriers, sec. 112; Am. & Eng. Enc. of Law (1st ed.), vol. 2, pp. 803, 804; Pittsburg, &c. R. R. Co. v. Barrett, 36 Ohio St., 448; Little Rock,

&c., R. R. Co. v. Hunter, 42 Ark., 200; Moore on Carriers, p. 134; Meloche v. Chicago, &c., R. R. Co., 116 Mich., 69.)

2. The lower court was correct in adjudging the burden of proof on the appellee. (Chaplain, &c., Co. v. Nelson Co., 25 Ky. Law Rep., 1154; Civil Code, sec. 126, subsec. 4; Merchant's Dispatch Trans. Co. v. Hoskins, 19 Ky. Law Rep., 799; Doerhoefer v. Shewmaker, 29 Ky. Law Rep., 1193; Sumners v. Simns, 79 S. W. Rep., 155; Thompson on Trials, secs. 228 and 229.)

3. The court properly refused a peremptory instruction for the appellant, and the verdict is not flagrantly or at all against the evidence. (Dolfinger v. Fishback, 12 Bush, 474; Bell-Coggeshall Co. v. Lewis, 28 Ky. Law Rep., 151.)

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

On the afternoon of August 22, 1905, Viola M. Smith delivered to the Southern Railway Company in Kentucky at its depot in Versailles a piano, two chairs, and three boxes of goods, for shipment to Ocean Park, Cal. No freight train to take the goods passed that afternoon, and that night the depot, with the goods in it, was burned. She brought this suit to recover against the company $2,000, the alleged value of the goods. The case was tried before a jury, who found a verdict for her in the sum of $1,500. The court entered judgment upon the verdict, and the railroad company appeals.

By its answer the railroad company pleaded as a defense to the action, that it had no train that could carry the freight scheduled to pass through Versailles after the freight had been delivered to it until about 9 a. m. of August 23d; that this was well known to the plaintiff when she delivered the freight, and that she understood that the goods were to be stored in the depot that night and loaded on the cars the next day; that in consequence of these facts it did not become

liable to her as a common carrier, but was only liable as a warehouseman for the goods. The court struck out this part of the answer, and of this the railroad company complains. In 6 Cyc. 453, the rule is thus stated: "Where the goods are delivered to the carrier for immediate transportation, and nothing remains to be done by the shipper, the liability of the carrier as carrier attaches at once. And even while detained in the carrier's warehouse in the usual course of business, or for the carrier's convenience, the liability of the carrier is not that of warehouseman, but that of carrier proper." See also, 5 Thompson on Negligence, section 441, and cases cited. The court, therefore, properly struck out this part of the answer. The original answer controverted the allegations of the petition, and also pleaded affirmatively that while the goods were in the depot, it was destroyed by fire, caused by lightning during an electrical storm, and without any fault or negligence on the part of the defendant. By the reply the affirmative allegations of the answer were denied. After the jury had been sworn, and the case stated to the jury, the defendant filed an amended answer in which it withdrew all the denials of the answer except those as to the value of the goods, and then moved the court to adjudge it the burden of proof and the concluding argument to the jury. This the court properly refused to do. The trial had begun, and a party should not be allowed to amend his pleadings on the trial simply for the purpose of getting the advantage of the last speech to the jury. The court might properly have refused to allow the amended answer to be filed, but when it became apparent to him for what purpose it was filed, he properly refused to allow any advantage to be taken of it. Amendments of pleadings,

especially after the trial has begun, are only to be
allowed in furtherance of justice, and. should never
be allowed for the purpose of merely ·changing the.
order of argument. It is unnecessary, therefore, for
us to determine whether under the answer as amended
the defendant was entitled to the burden and the con-
cluding argument.

, The proof for the defendant on the trial showed
that on the night of August 22d there was a severe
electrical storm at Versailles. It began raining some-
thing after midnight, and between 3 and 4 o'clock the
lightning was very vivid and frequent. About the
close of the storm there were two flashes of lightning,
followed instantly by thunder. One of· these ·was on
one side of the town, and the other in the neighbor-
hood of the depot. Two witnesses testify to being up
and seeing the flash of lightning. Both testify that it
seemed to strike not far off, and in the direction of the
depot. They did not, either of them, however, think
of the depot at the time, and both went back to bed;
A witness, who was watching a locomotive in the
yards of another company not far from the depot in
question, also testified to seeing the flash over in the
direction of the other depot, and that a short time
afterwards he looked over that way, and saw the
smoke from the burning building. He puts the time
that had elapsed at five minutes, but he had no time-
piece. .He was in his engine when the flash came, and
he did not go out until he went out to get some coal
for his engine when the rain held up. About 200
yards from the station a telegraph pole was struck
by lightning and badly shattered, and two other poles
beyond it were also shattered. From these poles the
telegraph wires ran into the depot, reaching the depot
at its east end, and passing along the eaves until they

were brought into the office. The first witness who got to the building testified that the east end of the depot was on fire, and that the main bulk of the fire seemed to be in the corner. At that time the house was burning all the way from the floor to the roof. Another witness speaks of the fire being up about the eaves along where the telegraph wires ran. None of the witnesses are very definite as to the time when the violent flash of lightning came, or how long had elapsed after this before they got to the station and saw it afire as above described. But their description of the fire and the extent to which the building was involved would indicate that the fire had been in the building some time, certainly much longer than five minutes. There had been no fire in the building for some time. The men who worked there had all left before dark, and they had had no lights in it that night. There is no proof by any one of any signs about the building that it had been struck by electricity. The evidence of the witnesses would rather tend to make the impression that the building was not struck by electricity, as they saw no signs of it. In addition to this, there seems to have been only one flash of lightning which struck in this neighborhood, and that evidently struck the teelgraph poles. If the building was set afire by electricity which was conveyed into the building by the telegraph wires, the fire probably would have been communicated at a point where there was a lack of insulation. If the wire had been properly grounded and properly insulated the lightning would perhaps have passed off into the ground without doing any damage; and if the lightning was carried into the building by defendant's own wires, the burden was upon it to show that it was not at fault in properly insulating its wires. The

carrier is answerable for a loss unless caused by the act of God or the public enemy. The act of God includes the forces of nature, such as lightning, earthquakes, and the like. But to exempt a carrier from liability by reason of any of these things, he must be free from negligence. In 5 Thompson on Negligence, section 6456, the rule is thus stated: ''Loss by the act of God may be said to include all losses resulting immediately from natural causes without the intervention' of man, and which cannot be foreseen and prevented by the exercise of prudence, diligence, and care, and the use of those appliances which the situation of the party renders it reasonable that he should employ.''

The manner in which this house was burning when discovered indicates to some extent that it had caught afire on the inside, and was burning up from the floor; at least there were facts from which the jury might have concluded this. There was also proof from which it might be concluded that something like an hour had elapsed after the flash of lightning before the building was seen in flames. Buildings are sometimes robbed and then set afire. The proof in this case leaves the mind in doubt as to how this fire originated. It is possible that the fire was caused by the lightning. From some of the evidence this seems very probable. Still, taking the testimony as a whole, we cannot say that there was no evidence to go to the jury, or that their verdict should be set aside. The court squarely and fairly submitted to the jury the question whether the fire was caused by lightning, and by their verdict they, in effect, said that it was not. The carrier is responsible for the loss unless he shows that it occurred from a cause for which he is not liable, and where the evidence is at all doubtful

or conflicting the question is for the jury, and their verdict should not be set aside where the evidence is wholly circumstantial, and the circumstances relied on are not conclusive; for a jury of 12 men are peculiarly qualified to pass on a question of this sort. On the whole case we have reached the conclusion that the question here was one of fact, and that the verdict of the jury should not be disturbed.

Judgment affirmed.