[No. 22544.  *En Banc.*  January 5, 1931.]

VERA GRANT, *Appellant,* v. LIBBY, McNEILL & LIBBY, *Respondent.*[1]

¹Reported in 295 Pac. 139.

*Geo. H. Mullins* and *Thos. H. Wilson,* for appellant.
*T. L. Smart* and *Grady & Velikanje,* for respondent.

BEALS, J.—Defendant Libby, McNeill & Libby operates a cannery near the city of Yakima. Much of the labor employed in the business is transient, and, in order to accommodate its employees, there being no dwellings nearby convenient for occupation by defendant's employees, defendant, prior to 1924, erected near its plant two rows of tent houses, one along each side of a north and south row of large black walnut trees. These tent houses, which defendant rented to its employees, were arranged for light housekeeping, and were composed of ordinary canvas tents fastened to wooden frames and provided with board floors.

Electric power for lighting, cooking and other household purposes, for which the occupants of the tents paid fifty cents per month, was conveyed to the tents

by a wiring system installed by defendant, and which had been inspected and approved by the electrical inspector of the city of Yakima. This system consisted of two wires starting from a nearby transformer of the Pacific Power & Light Company (whence a ground wire ran to and into the ground), running thence to one of the walnut trees standing near the middle of the row, where the wires entered a fuse box, from which the tents to the north were served on one circuit, and the tents to the south on another. The wires from the fuse box, which contained a set of fuses for each circuit, were strung along the trees and attached to branches or cross arms by means of porcelain insulators.

During the month of June, 1924, plaintiff, with her two minor daughters, the elder, Dorothy, between fourteen and fifteen years of age, occupied one of the tents standing near tree number three. Two electric wires ran into this tent and along the ridge pole thereof, from which was suspended a drop cord terminating in a double electric light socket. Electric current was supplied to this system by the Pacific Power & Light Company; the voltage being higher than that used in the ordinary dwelling, the current was reduced to the usual voltage used in a home by a transformer installed for the purpose of preventing excessive current passing over the wires. The transformer, including the ground wire which was a part thereof, was installed by the Pacific Power & Light Company.

Plaintiff was in the employ of defendant, and her daughter Dorothy was similarly employed on part time. A severe thunder storm blew up during the evening of June 14, 1924, during which a bolt of lightning struck tree number one of the row supporting the electric wires. Several of the trees afterwards showed

the effect of this stroke, but the greatest damage was suffered by tree number one. Dorothy Grant was alone in the tent at this time, and shortly thereafter was found lying dead upon the floor. The brass socket at the end of the drop cord was shattered, and it would seem that the lightning had jumped from this socket to the girl's body, striking her at the base of the skull, causing almost instant death.

Plaintiff brought this action against Libby, McNeill & Libby, E. S. Lueth, the electrical inspector of the city of Yakima, and the surety on his official bond, alleging in her complaint that the installation of the electric wires was defective and that no ground wires had been constructed to take care of excessive current, nor fuses installed on the subfeed wires entering the tent occupied by plaintiff and her family. It was also contended that the northern end of the wiring system was not properly insulated in that the wires were less than thirteen inches from the center line of that portion of the tree to which the appliances were attached, and that the manner of the installation of the wires was not in accord with the ordinances of the city of Yakima, but was in violation thereof.

Upon the trial, plaintiff took a voluntary nonsuit as to the defendants E. S. Lueth and the surety upon his official bond, so we are not concerned with the issues contained in the pleadings as to those defendants.

Defendant Libby, McNeill & Libby, who is herein referred to as though it were the sole defendant in the action, after denying the allegations of negligence on its part contained in plaintiff's complaint, alleged that, on the evening of the death of Dorothy Grant, there swept over Yakima and vicinity an electrical storm of great and unusual violence; that the bolt of lightning which during this storm struck the tree near the tent occupied by plaintiff was of such great force

and violence as to blow out and destroy the fuses which were contained in the electric wiring system; and that the death of Dorothy Grant was occasioned by a force and agency beyond the control of defendant, which constituted an act of God within the meaning of the law, and such an exercise of the forces of nature and the elements as could not have been guarded against.

Defendant also pleaded, by way of a second affirmative defense, that the electric system and wiring referred to in plaintiff's complaint was correctly installed, and that there was no instrument or device known which would have prevented such a bolt of lightning as struck tree number one from running along the wires and entering the tents. Defendant also pleaded, as a third partial affirmative defense, that the cause of action set forth in plaintiff's complaint was based upon alleged noncompliance with the provisions of certain ordinances of the city of Yakima, referring to the installation of electric wiring and providing that all such installations should conform to the city ordinance and to certain standard specifications of the National Electrical Code. Defendant further set forth in this affirmative defense certain allegations concerning the city ordinances and the National Electrical Code, setting forth that the city ordinances, in so far as they purported to adopt the National Electrical Code, were unconstitutional and void. The trial court refused to receive any evidence as to this last affirmative defense.

Plaintiff replied to the affirmative defenses contained in defendant's answer, and the action went to trial before the court sitting with a jury, the trial resulting in a verdict for the defendant, upon which judgment was entered dismissing the action. From this judgment plaintiff appeals, assigning error upon

rulings of the trial court entered upon motions and demurrers directed against respondent's answer; upon rulings of the trial court upon the admission and rejection of evidence; upon the giving of many instructions read by the trial court to the jury; in refusing to give three instructions requested by appellant; in denying plaintiff's motion for a new trial; and in entering judgment in respondent's favor upon the verdict of the jury.

Appellant moved to make more definite and certain respondent's first affirmative defense, in which respondent pleaded that the thunderbolt which killed Dorothy Grant was an act of God, arguing that the same did not plead facts, but, on the contrary, was argumentative and conjectural, and set forth no more than conclusions of law. Appellant also demurred to this affirmative defense upon the ground that it failed to state facts sufficient to constitute any defense, which demurrer was by the trial court overruled. We are convinced that the affirmative defense sufficiently pleaded the ultimate facts showing that the death of Dorothy Grant was the result of an act of God within approved definitions of that term. Corpus Juris quotes Lord Mansfield's definition of act of God as follows:

"By 'act of God' is meant a natural necessity, which could not have been occasioned by the intervention of man, but proceeds from physical causes alone, such as violence of the winds or seas, lightning, or other natural accident." 1 C. J. 1173.

The term is defined in Black's Law Dictionary as follows:

"Any misadventure or casualty is said to be caused by the 'act of God' when it happens by the direct, immediate, and exclusive operation of the forces of nature, uncontrolled or uninfluenced by the power of man and without human intervention, and is of such a char-

acter that it could not have been prevented or escaped from by any amount of foresight or prudence, or by any reasonable degree of care or diligence, or by the aid of any appliances which the situation of the party might reasonably require him to use.''

Appellant argues that if a party is himself negligent in not performing a duty, or in not anticipating a danger which should have been anticipated and guarded against, or if his own negligence has in some manner been a proximate cause of the injury complained of, such party cannot avoid liability by claiming that the injury was caused by an act of God, and cites in support of his argument 1 C. J., pp. 1174-1176, and authorities there referred to. Appellant cites numerous other authorities in support of this proposition, which authorities doubtless contain correct statements of the law applicable to the questions therein respectively discussed or decided. We believe that the law is correctly laid down in the texts referred to, but we hold nevertheless that respondent's first affirmative defense was not obnoxious, either to the motion directed against the same by appellant, or to appellant's demurrer. This defense stated substantially the ultimate facts, and we hold that the same was sufficient as against appellant's motions and demurrer.

Appellant contends that the trial court erred in sustaining an objection to appellant's offer of a copy of the 1918 National Electrical Code, contending that the copy of this code should have been received in evidence, and that the trial court not only erred in rejecting the same, but in instructing the jury to disregard all testimony which had been introduced in regard to a provision of this code relating to the installation of fuses and ground wires. Respondent contended that the provisions of the code sought to be introduced in evidence referred to other varieties of

electrical installation than that with which we are here concerned. We have read the evidence in connection with this matter, and examined the record carefully in connection therewith, and conclude that the trial court did not err in making the rulings complained of and in instructing the jury as above set forth.

Appellant next contends that the court erred in giving to the jury certain instructions, and in refusing to instruct the jury as requested by appellant. In this connection appellant cites the following text:

"When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care." 1 Shearman & Redfield on Negligence (5th ed.), p. 78, § 59.

It is admitted that the bolt of lightning struck tree number one, that it then proceeded over respondent's wires to the tent occupied by appellant, where the electricity jumped from the socket on the end of the drop wire to the body of Dorothy Grant, proceeding through her body to the ground, causing her death. Under the rules of law applicable, respondent was responsible for the installation, maintenance, control and operation of the electric system. Appellant contends that the evidence fails to disclose that respondent used any appliance for the protection of persons in the vicinity from such an accident as caused the death of appellant's minor daughter, and that such a state of facts shows negligence on the part of respondent. It is argued that properly constructed ground wires would have carried off a considerable amount of the electricity placed on the wires by the bolt of lightning, and would have rendered the stroke harmless. The

court, by its instructions, submitted to the jury for its determination the question of respondent's negligence, as presented by the allegations of appellant's complaint. Appellant contends that, under the doctrine of *res ipsa loquitur,* the court committed error in its instructions, and thereby too greatly limited the jury in considering the questions presented for determination.

In her complaint appellant alleged the falling of the thunderbolt and the resulting death of her daughter. Under the pleadings it was necessary that appellant show negligence on the part of respondent, which, concurring with the stroke of lightning for which respondent was not responsible, caused the death of Dorothy Grant. *Topping v. Great Northern R. Co.,* 81 Wash. 166, 142 Pac. 425, L. R. A. 1915F 1174. Much testimony was introduced by expert witnesses in regard to the proper method of installing and maintaining such an electric system as that in question here, and concerning the safety appliances which appellant contended might have been installed in connection therewith for the purpose of guarding against the surge of excessive electric current over the wires, whether from atmospheric electricity or otherwise. We are satisfied that, under the pleadings and the testimony, these questions were properly submitted to the jury, and that the trial court did not err, either in the instructions given upon this question, or by refusing the instructions requested by appellant.

Upon the question as to whether or not the death of appellant's daughter was the result of an act of God within the meaning of the law, many authorities are cited, and able arguments are advanced by both sides. Upon the questions presented in connection with this phase of the case, each party called expert witnesses, whose testimony was considered by the jury in arriving at its verdict. Appellant argues that

it appears from the testimony of one of respondent's witnesses, in response to questions propounded to him on cross-examination, that the electric system could have been so constructed that lightning surges of considerable intensity could have been taken care of and dissipated without occasioning more than merely minor damage. Respondent contends that the thunderbolt was of unusual power, while appellant contends that the testimony does not support this conclusion. We are satisfied that upon these questions the verdict of the jury is conclusive, and that if the court properly instructed the jury its verdict should not be disturbed.

Appellant complains of instruction No. 8 given by the court as follows:

"In considering the first affirmative defense of the defendant, which has to do with the alleged act of God, I instruct you that any misadventure or casualty is said to be caused by the 'act of God' when it happens by the direct, immediate and exclusive operation of forces of nature, uncontrolled or uninfluenced by the power of man, and without human intervention, and is of such a character that it could not have been prevented or escaped from by any amount of foresight or prudence, or by any reasonable degree of care or diligence, or by the aid of any appliances which the situation of the parties might reasonably require them to use.

"So if you find in this case that the stroke of lightning was an act of God, as defined above, such fact, if it be a fact, is a complete defense to the plaintiff's right of recovery in this action, and this regardless of any duty that might have been placed upon the defendant to install fuses at the entrance of Tent No. 6, and also regardless of the duty, if you find it was a duty, of the defendant to operate and maintain said system by the use of fuses and ground wires."

Appellant concedes that the first paragraph of the instruction correctly states the law, but complains of the second paragraph, contending that, instead of in-

structing the jury, "So if you find in this case that the stroke of lightning was an act of God," the court should have said, "So if you find in this case that the death of Dorothy Grant was caused by the act of God, as defined above," etc. While the instruction might properly have been given in the form suggested by appellant, we are of the opinion that the instruction as given does not constitute reversible error.

The first paragraph is not a mere definition of the phrase "act of God," but refers to "any misadventure or casualty," and advises the jury as to when the same may be said to have been caused by an act of God. In the case at bar, the misadventure or casualty was the death of Dorothy Grant, and, under the first paragraph of the instruction, the jury were told that, in order to find that the misadventure or casualty was caused by an act of God, they must find that it was of such a character that it could not have been prevented or escaped from by any amount of foresight or prudence, etc.

By the second paragraph of the instruction, the jury were in effect told that, even though the electric system might have been installed by respondent in a different manner, and fuses and ground wires placed therein, and even though the jury should find that it was the duty of respondent to install and maintain fuses and ground wires as a part of the system, nevertheless if respondent's failure to install such appliances had nothing to do with the death of Dorothy Grant, but that the installation of such apparatus would not have prevented the tremendous surge of electric current from entering her tent and killing her, then respondent could not be held liable in this action because of its failure to install fuses and ground wires. Under the pleadings it was for the jury to say whether or not the installation of the appliances, which appel-

lant contends should have been constructed, would have prevented electricity from entering the tent. If the installation of such apparatus would not have protected the tent from the entrance of electricity, then respondent should not be held liable to appellant because it failed to make such installation.

The jury could not have been misled by the second paragraph of the instruction, but must have understood from the words ''as defined above'' that, if they found that the death of Dorothy Grant, which it was admitted was caused by the thunderbolt, could not have been prevented, as stated in the first paragraph, their verdict should be for the defendant. The phrase ''as defined above'' indicated clearly to the jury the scope of the instruction, and links the two paragraphs thereof together so that the last paragraph could not have been considered by itself, but must have been read by the jury in connection with the first paragraph, which it is admitted correctly states the law.

Appellant contends that respondent owed appellant and her family the highest degree of care in guarding them against injury which might result because of the electric wiring system, and that the trial court erred in failing to instruct the jury to this effect. In the case of *Abrams v. Seattle,* 60 Wash. 356, 111 Pac. 168, it was held that a municipal corporation furnishing electric current for residential use owed to its patrons the highest degree of skill, care and diligence, and that under the facts of that case the doctrine of *res ipsa loquitur* should be applied. In the case cited the widow and daughter of W. L. Abrams sued the city to recover damages occasioned by the death of Mr. Abrams, who was killed by an electric shock which he received in turning on an electric light in his home, to which electric current was furnished by the defendant. These facts differ materially from those presented in

the case at bar. Respondent here was not engaged in the business of generating, transmitting and selling electric current to the public, either for power or domestic purposes, but was simply furnishing current to its own tenants, who were also its employees.

In the case of *McAllister v. Pryor,* 187 N. C. 832, 123 S. E. 92, 34 A. L. R. 25, cited by appellant, it appeared that the defendant was engaged in the business of generating and distributing electric current, as was the city of Seattle in the *Abrams* case.

In the case of *Abrams v. Seattle, supra,* this court held that the doctrine of *res ipsa loquitur* should be applied to its fullest extent. There was in that case no question of vis major, or act of God, the plaintiff's testimony indicating that the accident had occurred by reason of some disarrangement of the power distribution wires which the city should have remedied or discovered prior to the accident which occasioned Mr. Abrams' death. The facts of this case more nearly resemble those which were presented in the case of *Topping v. Great Northern R. Co.,* 81 Wash. 166, 142 Pac. 425, L. R. A. 1915F 1174, referred to above, in which it was held that the doctrine of *res ipsa loquitur* should not be applied to a situation in which it appeared that the death of the father of the plaintiff had been occasioned by an avalanche sweeping down a mountainside and destroying in its path a railway train in which plaintiff's father was riding as a passenger for hire. In the course of its opinion, this court said:

"The rule, *res ipsa loquitur,* cannot apply in this case, because here, as we have seen above, the circumstances surrounding the accident were not such as to raise a presumption of negligence. The avalanche was the primary cause of the accident, and the mere fact that the avalanche slid down the mountain-side and

destroyed the train would not of itself raise a presumption of negligence on the part of the appellant.''

It must be borne in mind that the accident which occasioned the death of Dorothy Grant had nothing to do with the ordinary use of the electric wiring installed by respondent. The accident would doubtless have occurred just as it did had the system been entirely disconnected from the wires of the power company from which the supply of current used for lighting and other household purposes was received. Whatever might be the rule in considering a question involving the construction of respondent's wiring, had an accident occurred by reason of an excessive amount of electricity passing over the wires from the line maintained by the power company, the question here presented involves the degree of care to which respondent should be held in view of what actually did occur. We conclude that in the case at bar the court correctly instructed the jury as to the degree of care which rested upon respondent.

Appellant assigns error upon the failure of the trial court to strike from respondent's answer an allegation to the effect that, at the time of the installation of the electric wiring system, it was not the custom to include, as part of any such systems, ground wires or other devices therein mentioned. In this connection appellant asserts that the trial court erred in refusing to withdraw from the jury all evidence as to any such custom, and in giving five instructions which appellant contends submitted to the jury some issue under the allegation above referred to. In her opening brief, appellant states that no evidence was received in support of any custom, and appellant does not point out the portions of the instructions complained of under this heading to which she objects. It is true that the court, in its first instruction, stating the is-

sues raised by the pleadings, referred to that portion of respondent's answer above mentioned, but the court properly instructed the jury that the burden of proof rested upon respondent to establish by a fair preponderance of the evidence the affirmative allegations contained in its answer, and we do not find in the other instructions, of which appellant complains in this connection, any reference to the matter of custom, as considered in connection with the installation or maintenance of the wiring system.

Finding no error in the record which calls for a reversal of the judgment of the trial court entered upon the verdict of the jury in respondent's favor, the judgment appealed from is affirmed.

MITCHELL, C. J., PARKER, FULLERTON, MILLARD, and MAIN, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent from the determination of the validity of instruction 8. The second paragraph of that instruction informed the jury that, if they found that the stroke of lightning was an act of God, as defined above, such fact, if it be a fact, is a complete defense to appellant's right of recovery in this action, regardless of any duty that might have been placed upon respondent to install fuses in the entrance of tent No. 6, and regardless of the duty, if found to be a duty, of respondent to operate and maintain fuses and ground wires in their lighting system.

The bolt of lightning was an established and indisputable fact. The jury could not escape so finding. When, as they were told in that instruction, that if they found the bolt of lightning occurred, it would be a complete defense to appellant's right of recovery in this action regardless of any duty imposed upon respondent to install fuses at the entrance of the tent

(even though the jury may have found such was the duty of respondent) and to maintain and operate this system by the use of fuses and ground wires, no verdict was possible other than one in favor of respondent.

The first and leading case, except insurance cases, as to liability for damage to a building by lightning conveyed by electric wiring appears to be *Jackson v. Wisconsin Telephone Co.*, 88 Wis. 243, 60 N. W. 430, 26 L. R. A. 101. It was there held that, where the testimony of the experts was conflicting, it was a question for the jury to determine as to the possibility that a bolt of lightning striking a flagstaff might be conducted by a wire to a building three hundred feet distant and burn it. It was there further held that a stroke of lightning is an act of God that does not relieve a person from liability for the burning of a building by lightning conveyed thereto by a wire with which he has negligently and without the owner's knowledge or consent connected it with the flagstaff on another building. During the discussion of that case, that court said:

"The further argument is made that the stroke of lightning was the 'act of God,' for which no one is responsible. Certainly a stroke of lightning is an 'act of God;' but that is not the question here presented, or rather another element—i. e. the negligence of man—is added to the question, which materially alters its scope. . . . The principle is the same as that involved in the case of *Borchardt v. Wausau Boom Co.*, 54 Wis. 107, 41 Am. Rep. 12. The lightning stroke is in no greater degree the act of God than the usual freshet occurring in a river."

Another court says:

" 'Loss by the act of God may be said to include all losses resulting immediately from natural causes without the intervention of man, and which cannot be foreseen and prevented by the exercise of prudence, diligence, and care, and the use of those appliances which the situation of the party renders it reasonable

154

that he should employ.' '' *Southern R. Co. v. Smith,* 125 Ky. 656, 102 S. W. 232.

Other cases sustaining the same principle are *Hubbard v. Olsen-Roe Transfer Co.,* 110 Ore. 618, 224 Pac. 636; *Amend v. Lincoln & N. W. R. Co.,* 91 Neb. 1, 135 N. W. 235; *Central of Georgia R. Co. v. Hall,* 124 Ga. 322, 52 S. E. 679, 110 Am. St. 170, 4 L. R. A. (N. S.) 898; *Piqua v. Morris,* 98 Ohio St. 42, 120 N. E. 300, 7 A. L. R. 129; *Feeney v. New York Waist House,* 105 Conn. 647, 136 Pac. 554, 50 A. L. R. 1539, and case notes; *Peninsular Telephone Co. v. McCaskill,* 64 Fla. 420, 60 South. 338, Ann. Cas. 1914B 1029.

In the last cited case, among other things, the court said:

"We are asked to take judicial knowledge of the fact that no known device can guard against the effects of a bolt of lightning, and therefore to say as matter of law, that the failure of the company to provide insulators or ground rods or other usual device, was not the approximate cause of the burning. . . .

"While the courts need not accept the opinions of experts as to physical facts, yet when the opinions of the experts agree among themselves and accord with the common observations of us all, we may accept them, especially when the party complaining of the result has called these same experts to support his theory.

"It is matter of common knowledge that lightning frequently plays along or near telephone lines and that our homes are secure though telephones are placed in them; rather than a menace a well installed telephone has come to be regarded a protection against the lightning's stroke. It may be true, that there is no protection against the destructive effects of a direct bolt of lightning of high voltage; but we must be wiser than we are, even after reading carefully the testimony of the experts of the plaintiff in error, to hold that the indirect effects of the indirect forces of a stroke of lightning may not be minimized and rendered harmless

by those safeguards in such common use, and in so far as the evidence before us discloses such safeguards as have never failed to accomplish the uses for which they were designed.

"In holding that it is actionable negligence to fail to provide any safeguards we are in line with what we consider the great weight of authority."

Five cases are then cited to sustain the conclusion of that court. A contrary case, *Phoenix Light & Fuel Co. v. Bennett,* 8 Ariz. 314, 74 Pac. 48, was there stated to have been challenged, citing Joyce on Electric Law, Vol. 1, § 445f.

See, also, case notes to report of preceding case by editors of Ann. Cas.

Applying the principles of the above case and citations, we have, in this case, experts disagreeing as to whether devices can be and should be installed which can guard against the effects of a bolt of lightning, and that the failure of respondent to provide, install and maintain such devices was the proximate cause of the electrocution. Moreover, it seems to be undisputed in this case that respondent failed to provide any safeguards whatever to prevent atmospheric electricity or lightning from being carried into its tents by its lighting system. The principal safeguards were those provided by the power and light company, which supplied the current, at its transformer.

This is not a case of injury from the destructive effects of a direct bolt of lightning of high voltage. It is a case of alleged lack of reasonable, or any, care by the one maintaining the lighting system in providing reasonable safeguards against the lightning stroke.

The *Topping* case, *supra,* strongly relied upon by respondent, does not aid it in this situation; nor do the cases of *Phoenix Light & Fuel Co. v. Bennett, supra;* nor *Griffith v. Cole Bros.,* 183 Iowa 415, 165 N. W. 577, L. R. A. 1918F 923. The first of those cases

156

has been criticized and generally disregarded. The second case involved a death by direct stroke of lightning.

The supreme court of California, in *London Guarantee & Accident Co. v. Industrial Accident Commission*, 202 Cal. 239, 259 Pac. 1096, 54 A. L. R. 1392, allowed recovery for the death of an employee under the workmen's compensation act against the industrial fund, although the death resulted from an earthquake, because he was compelled to work in a building of inferior construction, and the fall of the wall which killed him would not have occurred had the building been properly constructed. It was incontrovertibly established in that case that the earthquake of June 29, 1925, at Santa Barbara was the most serious disturbance of its kind that had occurred there during the history of that city of over one hundred years; that many apparently substantial buildings in the near vicinity of the one in which the workman was injured had been destroyed or severely injured as the result of that disturbance, and that some thirteen persons lost their lives as a result thereof; that the building where the injured workman was required to work was of very inferior construction or it would not have fallen during the earthquake in question. In the course of the opinion, the court said:

"While the earthquake, an act of God, may have contributed to the injury, yet it was not the sole cause of such injury, and except for the intervention of some human agency might not have produced any injury whatever."

The court then approved a definition, almost identical with ours, of the act of God:

" 'The phrase has been otherwise defined as . . . an act of nature which implies entire exclusion of all human agency.' "

. See, also, *Kuhnis v. Lewis River Boom & Logging Co.*, 51 Wash. 196, 98 Pac. 655.

It is clear, under well-established legal principles, that the last paragraph of instruction 8 was wrong in law, misleading and prejudicial.

For that reason the judgment should be reversed and a new trial ordered.

TOLMAN and BEELER, JJ., concur with HOLCOMB, J.

