GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. J. M. CRIER.

Decided March 6, 1907.

**1.—Derailment—Cyclone—Act of God.**

In a suit for personal injuries received in a wreck of a freight train caused by a tornado, evidence reviewed, and held to show that plaintiff's injuries were caused solely by the act of God, unmixed with negligence of the defendant.

**2.—Common Carrier—Act of God.**

When loss or damage is caused by the act of God a common carrier is not liable for such loss or damage, though it may have been negligent, unless it is shown that there was some causal connection recognized by the law between the negligence of the carrier and the loss or damage incurred.

Appeal from the Forty-fifth District Court, Bexar County. Tried below before Hon. J. L. Camp.

*Baker, Botts, Parker & Garwood, Newton & Ward* and *W. B. Teagarden,* for appellant.

*Perry J. Lewis* and *H. C. Carter,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This appeal is from a judgment against appellant for $12,000 damages for personal injuries alleged to have been inflicted on appellee by its negligence. The substance of plaintiff's petition is that on June 27, 1902, while he was in appellant's employ as a brakeman, he was commanded by his employer to go from

Glidden to Houston for the purpose of assisting in bringing one of its trains westward from there, and that in order to reach Houston he was ordered to take passage on a caboose in one of defendant's eastbound trains at Glidden; that in pursuance of the order he took passage on the caboose, for the purpose of going to Houston, having nothing whatever to do with running or operating the train to which it was attached.

That when the train reached a point about two miles west of East Bernard, it was derailed and wrecked by reason of defendant's negligence and the caboose overturned and plaintiff seriously and permanently injured; that the derailment and wreck were not caused by the act of God, as alleged in defendant's answer, but was proximately caused by its negligence in the following respects: that it had been raining hard, and the wind high a number of hours prior to the derailment, and the defendant, its servants in charge of the train, and its servants and employes knew this and had every reason to believe, before and just prior to the wreck and derailment, that a dangerous storm was being encountered, and that just ahead of the train the storm was severe and likely to intensify; that defendant, its crew in charge of the train, and its servants and employes also knew and had reason to believe, by reason of the heavy rainfalls, that the track and roadbed at the point of derailment was liable to be washed out and in a defective and dangerous condition, and defendant, its crew in charge of the train, its servants and employes also knew, or had reason to believe, that the wind was blowing hard and was likely to be more intense just ahead of the train, and knew, or by the exercise of ordinary care could have known, that the dangerous condition of the track together with the high wind was dangerous to the safety of the train and liable to produce its wreck and derailment. That under such circumstances it was the duty of defendant, its crew in charge of the train and its servants and employes to stop the train until the storm subsided, and it was further their duty, before proceeding, to send a man ahead to ascertain if the track was safe. But that notwithstanding this duty, the defendant, its crew in charge of the train and its servants and employes negligently failed to stop said train, and, with the dangerous conditions which existed ahead, known to defendant and its employes, or which could have been known by the exercise of ordinary care, negligently ran the train at a dangerous rate of speed into the midst of the storm and upon a track and roadbed which was defective and dangerous, without taking any precaution whatever to ascertain the dangerous conditions which existed ahead of the train. That at the place of derailment, defendant's track and roadbed was in a defective and dangerous condition through defendant's negligence, in that heavy rains had fallen upon them, and water standing upon and about the track and roadbed, which was thereby softened and washed out; that the ties were rotten and the rails insecurely fastened to the ties; that the track was not evenly laid upon the roadbed, and there were numerous low joints in the track; that these conditions of said track and roadbed greatly weakened them and made it dangerous for a train to attempt to run thereon; that defendant, its crew in charge of the train, its servants and employes knew, or by the exercise

of ordinary care would have known, of the defective and dangerous condition of the track, but notwithstanding this they negligently ran the train upon the track at an excessive and dangerous rate of speed, and the dangerous rate of speed, and the dangerous condition of the track, together with the excessive rate of speed, caused the track and roadbed to yield and give way, and both the excessive rate of speed and defective track and roadbed contributed to bring about the derailment of the train, the track and roadbed being insufficient to sustain it under the circumstances. That under the facts and circumstances alleged, it was defendant's duty and the duty of its servants and employes, to have had men out upon the track watching for washouts; and that defendant, its servants and employes negligently failed to use any care to discover the defective condition of the track and roadbed. That defendant was guilty of negligence in permitting its track and roadbed to be in the condition described, and was further guilty of negligence in failing to discover the defective and dangerous condition of said track; that it was further guilty of negligence in failing to stop the train, and in running the train in the storm, without observing any precautions; that it was further guilty of negligence in running its train in said storm and over the defective track, at an excessive and dangerous rate of speed, as alleged, and that all of these acts of negligence, together with the other acts of negligence alleged directly caused or contributed to the derailment and wreck of the train.

The defendant, after interposing a general denial, answered that the wreck and derailment of the train was entirely and solely due to an act of God, for which the defendant was in no wise responsible, in this: That when the train reached the point where it was derailed it encountered an unusual, unprecedented and violent storm, the wind attaining the velocity of a cyclone or tornado, the wind blew with such violence that it overturned all the cars in the train, picked up one of the cars and carried it fifty yards from the track into a field; that the tornado was of such violence and strength that many houses in the immediate vicinity of the derailment were blown down, demolished.

The first assignment of error, which, under our view of the case, is the only one we deem necessary to discuss, complains of the court's failure to peremptorily instruct the jury upon defendant's request to return a verdict in its favor. This assignment has required, and has been given by each member of the court, an extended and thorough examination of the testimony in order for it to determine whether there is any evidence, when taken and viewed in the light most favorable to the plaintiff, which tends to show that defendant was guilty of any negligence proximately causing or contributing to the derailment of the train and the consequent injury to the plaintiff. The only conclusion that any one of ordinary intelligence can reach from the evidence in the record is, as will be shown from the testimony, that the train upon which the plaintiff was riding was blown from the track and wrecked by a cyclone. As a "man knoweth not the ordinances of Heaven, and can not set the dominion thereof in the earth," it must be regarded the act of God, to whom the devices and mechanisms of man "are as stubble before the wind and as chaff that the storm carrieth away." If then, it be shown by the evidence that a cyclone was the

cause of the wreck, the presumption of negligence, which ordinarily obtains from the fact of a derailment, does not arise in this case. For the very evidence that shows the derailment, proves its cause to be one that could not be anticipated and provided against; and this would cast the burden of proving the defendant's negligence upon the plaintiff. Memphis & C. Ry. Co. v. Reeves, 10 Wall, 176, 19 L. Ed., 909; Turner v. Haar, 114 Mo., 347, 21 S. W. Rep., 739; American Brewing Assn. v. Talbot, 141 Mo., 681; Gillespie v. St. Louis, etc., Ry. Co., 6 Mo. App., 558; Lamb v. Camden, etc., Transp. Co., 46 N. Y., 279, 7 Am. Rep., 330; Norfolk & W. R. Co. v. Marshall (Va.), 20 S. E. Rep., 823; McClary v. Sioux, C. & P. R. R. Co., 3 Neb., 44; Denver & R. G. R. Co. v. Pilgrim, 47 Pac. Rep., 658. If then, as we shall hold from the undisputed evidence, the train encountered and was wrecked by an irresistible cyclone, and there was no evidence going to show such negligence on the part of the defendant as concurred with and proximately contributed to the force of such act of God in wrecking the train, the plaintiff was not entitled to recover; and the court should have peremptorily instructed the jury to return a verdict in favor of the defendant.

We will now, with a view of determining this question, state at some length the evidence adduced upon the trial, and the statement shall comprehend the testimony showing the wreck was caused by the act of God, and such as bears upon the question as to whether any negligence charged against the defendant concurred with the cyclone and proximately contributed to the catastrophe.

Glidden is one hundred and twenty-one miles east of San Antonio; Eagle Lake nineteen miles east of Glidden; Lissie is seven miles east of Eagle Lake; Nottawa about three and a fourth miles east of Lissie; and East Bernard between four and five miles east of Nottawa, and thirty-five miles east of Glidden. All are stations on defendant's railroad, Glidden being at the east end of its San Antonio division. These stations are all passed by trains running from San Antonio to Houston.

The plaintiff was, on June 27, 1902, and had been long prior thereto, in defendant's employ as a freight brakeman. In the morning of that day he left San Antonio on a freight train for Glidden. When the train reached there it was consolidated with another, and the consolidated train placed in charge of a different crew. The caboose of the train from San Antonio, being attached to the one made up in Glidden, plaintiff and the crew to which he belonged were ordered to go on it with the train to Houston for the purpose of taking charge of and bringing out another train in that city. He, nor the members of his crew, had anything to do with the management or operation of the train en route to Houston, and only occupied the caboose for the purpose of being carried there.

Before reaching Glidden the train which left San Antonio in the morning encountered a hard rain accompanied with high winds, and all its crew got wringing wet. After remaining there some time and drying their clothes, the train drawing their caboose pulled out for Houston. When it reached a point between Nottawa and East Bernard, about a mile and a half west of the last named station, it was wrecked.

The undisputed evidence shows that this wreck was caused by a cyclone which originated about three and a half miles southwest of where it occurred, and continued in a northeastern direction some four and a half miles from there, extending in its width from two hundred and fifty to four hundred yards. In other words, its direction was northeast, its length seven or eight miles, with a width varying from two hundred and fifty to four hundred yards. Its force was greatest, as shown by the destruction left in its wake, along its center. It unroofed, wrenched from their foundations and destroyed houses; its force stopped the train, wrenching and lifting the cars from their trucks, hurling them on either side of the track, and one of them a distance of a hundred and fifty feet or more into a field beyond; and, when it struck the ground whirled it round and sported with it as though it were a top in the hands of a boy. Only the engine and three heavy iron-tanked oil cars held the track against its terrific force. It left death and destruction along its path and wailings above ruined homes and untimely graves.

If this terrible destruction was not the act of Him who "putteth forth his hand upon the rock and overturneth the mountains by their roots," then it may be said of man, instead of God, "He stretcheth out the north over the empty place, and hangeth the earth upon nothing."

If not a sacrilege, it is at least preposterous to say that the destruction of this mighty force of nature was proximately produced by the concurrence of the puny hand of man. There is as much reason for saying that the cloud of dust raised by the chariot of a king was increased by the buzzing fly upon one of the wheels; or that the bellowing of an angry bull was augmented by the singing of the gnat seated upon his horn.

While the testimony shows that at times the wind was high, and the rain heavy when the train was en route from Glidden to where it encountered the cyclone, it does not tend to show that either was of such character as to cause any reasonable apprehension of danger to the train. The witnesses who resided near East Bernard all testified that the appearance of the cyclone was only a few minutes before it struck the train, and the testimony of the trains' crew was to the same effect. The evidence shows that it came from a different direction from which the winds had prevailed during the day. There is not a particle of evidence tending in the least to prove that defendant was guilty of any act of negligence charged by plaintiff which concurred with the cyclone in wrecking the train. Nor is there anything which tended to show that defendant's engineer and conductor were guilty of negligence in failing to stop the train before encountering the whirlwind. Had they known or had reason to believe it was impending they had no more reason to believe that it would strike the railroad where it did than at any place along its road where the train might have been stopped. Defendant's servants operating the train might as well be charged with knowledge of where a thunderbolt would strike and be imposed with the duty of avoiding it as to charge them with knowledge of when and where a whirlwind would arise and the course it would take. "There is a path which no fowl knoweth, and the vulture's

eye hath not seen." 'Tis the path designed for the cyclone by Him "the thunder of whose power none can understand."

"A reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can foresee as probable, nor waste his time and anxiety on events that are barely possible. He will order his precaution by the measures of what appears likely in the known course of things. This being the standard, it follows that if in a particular case (not being within certain special and more stringent rules) the harm complained of is not such as a reasonable man in defendant's place should have foreseen as likely to happen, there is no wrong and no liability." Webb's Pollock on Torts, 45, 46.

The rule is well settled in this State that where loss or damage is caused by the act of God, a common carrier is not liable for such loss or damage, though it may have been negligent, unless it can be made to appear that there was some causal connection recognized by the law between the negligence of the defendant and the loss or damage incurred. Fentiman v. Atchison, T. & S. F. Ry. Co., 98 S. W. Rep., 939, and authorities cited. In the case before us there is no evidence at all of any negligence of the defendant. But if it had been shown guilty of every act charged against it as negligence, there is a total failure of proof tending to show that any such act concurred with the act of God in causing plaintiff's injury.

As the undisputed evidence shows that plaintiff's injury was caused solely by the act of God, not contributed to by any negligence of defendant, the court erred in not peremptorily instructing a verdict in its favor. And as the case was fully developed upon the trial, and it appears from the undisputed evidence, that defendant was not liable for the injuries caused plaintiff by the wreck of the train, the judgment of the District Court is reversed and judgment is here rendered in favor of the appellant.

*Reversed and rendered.*

Writ of error refused.