[No. 11949.   Department Two.   August 11, 1914.]

WILLIAM TOPPING, *by his Guardian etc., Respondent,* v.
GREAT NORTHERN RAILWAY COMPANY, *Appellant.*[1]

CARRIERS—INJURIES TO PASSENGERS—CAUSE OF ACCIDENT—ACT OF
GOD—CONCURRING NEGLIGENCE—BURDEN OF PROOF.  There is not such
a presumption of negligence on the part of a railway company merely
from the occurrence of an accident as to render it liable for the
death of a passenger on the ground of *res ipsa loquitur,* but the ac-
cident was the result of an act of God, placing the burden on plain-
tiff to show negligence concurring therewith before recovery could
be had, where it appears that a passenger train stalled in the moun-
tains was placed on a passing track on a hillside during an un-
usually severe snowstorm, while efforts were being made to open
the track, and that while so located, an avalanche of snow swept
down the mountain-side and carried the train one hundred feet from
the track, where it was destroyed, killing and injuring the pas-
sengers, it further appearing that the hillside above the train
sloped at an angle of 30 degrees, and at the time of the accident was
covered with from nine to twelve feet of snow, that slides had never
occurred before at the place in question, but were known to have
occurred along the mountain-side, usually in gullies, and that the
railroad had been operated at that place for a period of seventeen
years.

SAME—NEGLIGENCE—EVIDENCE—SUFFICIENCY.  In such a case, the
railroad company is not shown to be guilty of negligence concurring
with the act of God in causing the accident from the fact that it
adopted the location on the hillside for its roadbed, in failing to
construct a snowshed over the passing track or to move the train
under snowsheds near the place of the accident, in failing to move
the train into a tunnel near at hand or to a spur opposite a flat
area, in failing to notify the passengers that it did not intend to, or
could not, move the train from the mountain-side to a safe place,
in taking the train from the tunnel, where it was safe, and in leav-
ing it on the mountain-side where there was a heavy body of snow,
where it appears that the road had been located and operated at
the place of the accident for seventeen years, that no slide had ever
occurred there before, that the train was placed on the passing
track for the convenience of the passengers, who remained on the
train during the blockade and boarded at a hotel nearby, and be-
cause it was considered a safe place; that the failure to notify the
passengers that the officers did not intend to move the train, or in

[1] Reported in 142 Pac. 425.

failing to notify them that it could not move the train to a safer place, was because the officers did not know when the train could be moved; that the company was using every effort to raise the blockade and to provide for the safety and comfort of the train and passengers; that no one could anticipate that a slide would occur; and that the officers of the train exercised their best judgment in placing the train where it was at the time of the accident.

Appeal from a judgment of the superior court for King county, Humphries, J., entered November 15, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for the wrongful death of a passenger on a railroad train. Reversed.

*F. V. Brown* and *F. G. Dorety*, for appellant.

*Fred M. Williams* and *L. F. Chester*, for respondent.

MOUNT, J.—This action was brought by the plaintiff through his guardian *ad litem* to recover damages on account of the death of his father. The father, Edward W. Topping, was a young man thirty years of age. He was killed while a passenger on one of the trains of the Great Northern Railway Company which was wrecked by an avalanche at Wellington, in this state, on March 1, 1910.

The cause of action was based upon the following paragraph of the amended complaint:

"That on to wit the 1st day of March 1910, Edward W. Topping was a passenger for hire on one of defendant's trains, between the cities of Spokane, Washington, and Seattle, Washington, and en route to the latter and while such passenger, said train was, on said last named date, through the negligence and carelessness of defendant, derailed and wrecked at or near the station called Wellington, on said road, the exact nature and extent of said acts of negligence on the part of defendant not being fully known to plaintiff, but well known and understood by defendant, and the said Edward W. Topping was then and there killed in and by said wreck and derailment of said train."

The answer of the defendant was a general denial and an affirmative defense of *vis major,* or act of God. The

cause was tried to the court with a jury. At the close of the plaintiff's evidence, a motion for nonsuit was denied. At the close of all the evidence, a motion for a directed verdict was also denied. After the cause was submitted to the jury, a verdict was returned in favor of the plaintiff for $20,000. This appeal followed.

Numerous errors are assigned. But we are satisfied that the motion for nonsuit and motion for a directed verdict should have been sustained by the trial court, and for that reason we shall notice only these assignments.

The following facts are practically undisputed: Edward W. Topping took passage from Spokane on the defendant's train bound for Seattle, on the evening of February 22, 1910. This train was a regular passenger train running from Spokane to Seattle across the Cascade mountains. The distance between Seattle and Spokane is about 375 miles. The running time was about 12 hours. This train did not carry a dining car, but carried sleeping cars. It is conceded that Mr. Topping was a passenger for hire on this train. At the time the train left Spokane, there was known to be a storm in the Cascade mountains which had been raging for a period of one or two days. But at that time trains were running regularly on about schedule time. This train was No. 25, and will hereafter be referred to by that number.

In the Cascade mountains, is a tunnel about three miles long through the summit. The station at the east portal is known as the "Cascade tunnel." The station at the western end of this tunnel is known as Wellington, at which place there is a hotel and a few other buildings located on the mountain-side near the railway. Train, No. 25 reached Cascade tunnel at the eastern end of the tunnel at about 5:30 in the morning of February 23d. At that time the storm had not abated in the mountains and the line at points between Wellington and Seattle was blocked with snow. Train No. 25 remained at Cascade tunnel until the evening of Feb-

ruary 24th, when it was taken through the tunnel and placed
on a passing track at Wellington, where it remained until
February 28th, or the morning of March 1st at about 1:30
o'clock, when an avalanche of snow swept down the mountain-
side and carried this train with it a distance of about 100 feet
below the track, where the train was destroyed. Edward
W. Topping and other passengers were killed. Others were
injured.

When train No. 25 arrived at Cascade tunnel on the morn-
ing of February 23d, there was a heavy snowstorm. Snow
had been falling about 24 hours. It had been falling at the
rate of about three feet per day. Some of the witnesses tes-
tified that, when the train went through the tunnel to Well-
ington, the snow there was between eight and nine feet deep.
It was not shown or claimed that this was all fresh snow.
A part thereof had accumulated during the winter.

The railroad track at Wellington was built upon the moun-
tain-side. The railway tracks at this place consisted of a
main line, two or three switches, and what is known as a
"passing track." The passing track connected with the
main line at each end. During the time train No. 25 stood
upon this passing track, the railroad between Wellington and
Seattle was blocked with snow and slides, so that trains could
not run through. The track was also blocked with snow and
slides from the Cascade tunnel east toward Spokane. From
the time train No. 25 was placed on the passing track at
Wellington on the 24th of February until the 1st of March,
every effort was being made by the railroad company to open
the track so that trains could be run through. On the night
of the 28th, or the morning of March 1st, an avalanche of
snow broke upon the hillside to the north of the train, and
slid down, carrying the train with it. This avalanche broke
off four or five hundred feet above the track, and extended
from 1,500 feet to 2,000 feet along the track. At that time,
there was an unusual storm raging: wind, thunder, lightning,
and excessive snow. It was an unprecedented storm. The

avalanche came without warning and swept the train down the hillside.

Part of the time while the train was at Wellington it stood in the mouth of the tunnel, which is but a short distance away. It was then moved down a little west of the town of Wellington, where it was when finally swept away. To the west of Wellington, there were snowsheds. A little further on was what was testified to by some of the witnesses as a flat place. The hillside above the train extended up at an angle of about 30 degrees. The snow upon the hillside at the time of the disaster was from nine to twelve feet deep. The railroad had been operated in this place for a period of seventeen years. The storm was an unprecedented one, both in length of duration and in its violence. Snow slides had been known to occur along the mountain-sides during the winter seasons during heavy storms. These slides usually occurred in gulleys. A slide had never been known to occur at the place where the train was standing on the siding. A little west of this, some five or six hundred feet, a slide had occurred some years previous, but at a point where there was a gully.

It is apparently conceded, or at any rate it was shown by the plaintiff, that the primary cause of the accident was the snowslide which came down the mountain-side and swept the train to disaster. It is plain, from the evidence in the case and from the undisputed facts, that this avalanche was what is known in law as *vis major* or an act of God, which, unless some intervening negligence of the railway company is shown to have cooperated with it, was the sole cause of the accident, and for which the railway company is not liable. As we have seen, the complaint alleged that the train was wrecked through the negligence of the appellant, the nature of which negligence was unknown to the respondent. No specific act of negligence is alleged. The respondent contends that there is a conflict of authority upon the question whether it is the duty of the defendant to show affirmatively that there was no negligence or want of due care on its part

when the defense is an act of God; and argues that the weight of authority supports the rule that it is incumbent upon the carrier to show that due diligence was used, in order to avoid injury or loss.   If there is a conflict in the authorities upon this question, we are satisfied the better rule is, in cases such as the one before us, where the respondent alleges negligence and shows that an act of God was the primary cause of the injury, he is required to show negligence of the appellant concurring with the act of God before there can be a recovery.   We think that rule has been adopted in this state.   If the accident is of such a character as to raise a presumption of negligence, from the occurrence of the accident itself, then, no doubt, negligence will be presumed, under the rule *res ipsa loquitur;* but if the circumstances surrounding the accident are not such as will raise a presumption of negligence, then it is necessary to prove negligence.   This rule has been laid down by this court in *Lynch v. Ninemire Packing Co.*, 63 Wash. 423, 115 Pac. 838; *Lewinn v. Murphy*, 63 Wash. 356, 115 Pac. 740, Ann. Cas. 1912 D. 433; *Wile v. Northern Pac. R. Co.*, 72 Wash. 82, 129 Pac. 889; and *Johnson v. Columbia & Puget Sound R. Co.*, 74 Wash. 417, 133 Pac. 604.   The rule, *res ipsa loquitur*, cannot apply in this case, because here, as we have seen above, the circumstances surrounding the accident were not such as to raise a presumption of negligence.   The avalanche was the primary cause of the accident, and the mere fact that the avalanche slid down the mountain-side and destroyed the train would not of itself raise a presumption of negligence on the part of the appellant.   It was therefore necessary to prove negligence; and we think the respondent, when the complaint was filed, appreciated this rule, because negligence was alleged.

In *Cormack v. New York, N. H. & H. R. Co.*, 24 L. R. A. (N. S.) 1209, in a note to that case, it is said:

"All the authorities are agreed upon the proposition that an unusually heavy snowstorm which ties up railroad operations to such an extent as to obstruct the movements of

trains is an act of God which will relieve a common carrier from liability for loss of goods or for injuries to passengers caused thereby.   [Citing authorities.]

"Upon the same principle, it was held in *Denver & R. G. R. Co. v. Andrews,* 11 Colo. App. 204, 53 Pac. 518, that a snowslide in a mountain, which struck and derailed a train at a point on the railroad where a slide had never before been known, and where there was no reason to anticipate one, was an inevitable accident, and that the carrier would not be liable for injuries to a passenger, caused thereby."

In *Gillespie v. St. Louis, K. C. & N. R. Co.,* 6 Mo. App. 554, the court said:

"The burden lay upon her to show that, notwithstanding the operation of the act of God in the case, the negligence of the defendant caused the injury, or actively cooperated with the act of God to produce it.   Even if it could be stated without qualification, which it cannot, that, in an action against a carrier by a passenger, mere proof of the accident and injury shifts the burden, that rule would not apply to a case where the plaintiff's own evidence shows the act of God as an operating and possibly sufficient cause.   See *Railroad Co. v. Reeves,* 10 Wall. 190; *Livezey v. Philadelphia,* 64 Pa. St. 106; *Le Barron v. Ferry Co.,* 11 Allen 316; Whart. on Neg., sects. 129, 661."

And further along in that case it was said:

"It has been truly said there is hardly any act of God, in the legal sense, which an exhaustive circumspection might not anticipate, and supposable diligence not avert the consequences of.   So that this doctrine would end in making the carrier responsible for the act of God, when by law the passenger, and not the carrier, takes this risk.   It has been seen that to make the rule a working rule, and give to the carrier the practical benefit of the exemption which the law allows him, he must be held, in preventing or averting the effect of the act of God, only to such foresight and care as an ordinarily prudent person or company in the same business would use under all the circumstances of the case.   [Citing authorities.]"

To the same effect see *Jones v. Minneapolis & St. L. R. Co.,* 91 Minn. 229, 97 N. W. 893, 103 Am. St. 507.   And in *Wolf*

*v. American Express Co.,* 97 Am. Dec. 406, in note at page 411, it is said:

"If it appears from the plaintiff's own evidence that the act of God caused the injury to the goods, the carrier is exonerated from liability, unless the plaintiff shows that the carrier was guilty of some specific negligence which actually co-operated to produce the loss."

And in *Galveston, H. & S. A. R. Co. v. Crier,* 45 Tex. Civ. App. 434, 100 S. W. 1177, the court said:

"If, then, it be shown by the evidence that a cyclone was the cause of the wreck, the presumption of negligence, which ordinarily obtains from the fact of a derailment, does not arise in this case. For the very evidence that shows the derailment proves its cause to be one that could not be anticipated and provided against, and this would cast the burden of proving the defendant's negligence upon the plaintiff. [Citing a number of cases.]"

We are satisfied that this is the correct and reasonable rule. It was the duty of the respondent, therefore, to prove negligence on the part of the appellant. This we are satisfied was not done.

The respondent argues at length that the appellant company was negligent, and that such negligence cooperated with the act of God to cause the accident. This argument is summarized in the respondent's brief as follows:

"(1)   In adopting the shelf along the mountain-side for its road-bed and laying its tracks there.

"(2)   In failing to construct a snowshed over the passing tracks knowing the passing track would be used for holding trains taken off the main line and knowing the liability to snowslides along that portion of the road from Wellington to Alvin.

"(3)   In taking the train from Cascade Tunnel, where it was safe from snowslides, and placing it upon the passing tracks on the mountain side that arose precipitously above and descended precipitously below it at a time when that mountain-side was carrying a heavy body of snow.

"(4) In leaving the train on that mountain-side during the four days and nights intervening between the time of placing it there, and the time of the snowslide in question.

"(5) In failing to move the train under the snowsheds on the 25th or 26th of February, when the defendant had the tracks to snowshed 3.3 clear and admittedly had the means with which to move the trains to the snowsheds.

"(6) In failing to move the train from the mountain-side back to the spurs opposite the flat area between the station and the tunnel while it admittedly had the power to do so.

"(7) In failing to move the train from the mountain-side into the tunnel, where it would have had absolute safety from the impending danger while it admittedly had the power to do so.

"(8) In failing to notify the passengers of train 25 on or before the night of the 26th of February that it did not intend to move the train from the mountain-side.

"(9) In failing to notify them thereafter that it would not or that it then claimed it could not move the train to a safer place instead of leading them to believe the train might start on its destination at any time."

These are all of the specified acts of negligence argued by the respondent. It is apparent that none of these are negligent acts. If it was a negligent act for the railway company to construct its road along the mountain-side, then it was negligence to construct its line or run its trains across the mountains. It is common knowledge that railroads cannot be constructed across the Cascade mountains without building tracks upon the mountain-sides. Nor was it negligence to fail to construct snowsheds over the passing track. While it was known that this track was for the purpose of holding trains when taken off the main line, it is not shown, nor is it a fact, that any other slide had occurred at this particular point. In fact, the undisputed evidence is that no slide had ever occurred at this point previously. The road had been operated and maintained for a period of seventeen years at this place, and no slide had ever occurred at this place. There was no negligence, therefore, in failing to

anticipate a slide or an unusual storm or an unusual occurrence.

It is argued, also, that taking the train from the tunnel and leaving it upon the mountain-side for four days, failing to move it under a snowshed some distance away, failing to place the train upon what was known as a flat area between the station and the tunnel, failing to move it from the mountain-side into the tunnel, were acts of negligence. When viewed in the light of what happened afterwards, it is no doubt true that the accident would not have happened if the train had been at some other place. But at the time the train was placed on the passing track, where it was when finally destroyed, it was placed there by reason of the fact that this was considered the most convenient place for the passengers who remained on the train and who boarded at the hotel in the town of Wellington within four or five hundred feet from where the train was stationed, and because this was apparently a safe place. No one at that time anticipated, nor at any other time could anticipate, that a snowslide was about to occur at that place. It certainly cannot be held that the officers in charge of the train were required to know in advance that the storm which was then raging would continue for an unprecedented length of time, or that an avalanche of snow would come down the mountain-side at that place where a slide never had occurred when the snow had been much deeper. They certainly, in the exercise of their judgment and experience, were authorized to place the train where past experience had shown it would be safest and most convenient. There is no evidence to show that they did not exercise this judgment and place the train where, in their opinion, it was safest. It cannot be assumed, therefore, nor said, that the officers were negligent in placing the train where it was placed. In *Galveston, H. & S. A. R. Co. v. Crier, supra*, the court of civil appeals of Texas said upon this question, where the derailment of a train was caused by a cyclone:

"Nor is there anything which tended to show that defendant's engineer and conductor were guilty of negligence in failing to stop the train before encountering the whirlwind. Had they known or had reason to believe it was impending, they had no more reason to believe that it would strike the railroad where it did than at any place along its road where the train might have been stopped. Defendant's servants operating the train might as well be charged with knowledge of where a thunderbolt would strike and be imposed with the duty of avoiding it, as to charge them with knowledge of when and where a whirlwind would arise, and the course it would take."

And the same is true in this case. The officers in charge of this train were no more bound to place the train upon a flat or in a tunnel, or under a snowshed, than they were to know that an avalanche was sure to come, or to know the exact spot where the avalanche would start, the course it would take, or its extent. These things are clearly beyond the knowledge of men. And of course the railway company cannot be said to be guilty of negligence in failing to know them. It was not known that a snowslide would occur. While the snow was deep, it was no deeper than it had been on previous occasions, when no slide had occurred at this place. As tending to show that every one there regarded the train as the safest place, it was shown, without dispute, that the passengers and railway employees and officials present slept upon this and other trains there in preference to sleeping in the hotel, which could have accommodated them, and which furnished them their meals.

Nor was there any negligence in failing to notify the passengers that the officers did not intend to move the train from the mountain-side, or in failing to notify them that it could not move the train to a safer place instead of leaving them to believe that the train might start on its destination at any time. These two propositions were not negligence for reasons hereinbefore stated, and for the further reason that the

officers themselves did not know when the train could be moved. They and every one there knew that the train was completely blocked and could not then be moved. And it was not shown that these officers, or any other person in that vicinity or elsewhere, then knew that a slide would occur or suspected that this place was not as safe as any other place in that vicinity. The belief was that this was the safest place, and this belief was justified by past experience and under all the then existing conditions. The evidence shows, without dispute, that the railway company was using every energy, almost superhuman efforts, to raise the blockade which caused the train to be at that place, and were suspecting that the train might start on its way to its destination at any hour, until the train was finally swept away. Every possible human effort was being exercised by the railway company with men and snow plows to raise the blockade which then existed upon that part of the appellant's railway line. Viewing the case from every angle, it is plain that this avalanche was what is known in law as an act of God; that no negligence on the part of the appellant or its employees was shown in any particular; that every effort was being made by the railway company for the comfort and safety of its train and the passengers aboard it; that they had operated this road for a period of seventeen years without an avalanche or snow slide at this particular place; that this was an exceptionally severe storm; that it lasted for an exceptionally long time; and that, before that time, no accident of this kind had ever occurred upon its line in this state. It is too plain for argument that no negligence of the appellant was shown, but that the slide, which was the proximate cause of the accident, was a cause over which the railway company had no control, which it did not and could not foresee or know of until after it occurred, and for which it is not responsible. It was the duty of the trial court, therefore, to have granted a nonsuit, or to have instructed the jury to return a verdict in favor of the appellant.

The judgment is therefore reversed, and the cause ordered dismissed.

CROW, C. J., PARKER, and MORRIS, JJ., concur.