Donnie **THORESON**, Petitioner,

v.

D. F. **THOMPSON**, Respondent.

No. B–673.

Supreme Court of Texas.

July 17, 1968.

Rehearing Denied Oct. 2, 1968.

Linn, Helms & Countiss, Richard Countiss, Spearman, for petitioner.

Lemon, Close & Atkinson, R. D. Lemon, Perryton, Ogden, Ogden & Board, Guymon, Okl., for respondent.

HAMILTON, Justice.

This is an action for damages for the negligent destruction by fire of a wheat crop. The landowner-petitioner, Thoreson sued Thompson, a professional in the custom-cutting business, alleging that the act of Thompson's employee Leslie, in driving defendant's two ton truck into the wheat stubble was negligence which proximately caused the fire and destroyed the wheat. The jury in response to special issues so

found, and judgment was rendered for Thoreson for $7380.00. The court of civil appeals reversed this judgment and rendered judgment that plaintiff take nothing. 423 S.W.2d 175. The predicate for this holding was twofold: first, that there was no evidence that "the fire was caused by any negligence traceable to appellant or his employees." Second, that there was no evidence that driving the truck into the stubble was negligence. We disagree.

■ Since the court of civil appeals held that there was no evidence to support the jury's findings, a full statement of the evidence is proper. In reviewing this holding it is fundamental that the court only considers that evidence "which, when viewed in its most favorable light, tends to support (the jury's) finding, and must disregard all evidence that would lead to a contrary conclusion." Lindley v. Lindley, 384 S.W.2d 676, 679 (Tex.Sup.1964).

We shall first consider the evidence which it is contended is relevant to the question of negligence in driving the truck into the field.

The defendant had been in the wheat cutting and combining business since 1959 and for several years prior to 1965, the year of the accident, had contracted and cut the wheat of petitioner. The field involved herein contained 186 acres and was practically square. There was a road on one side of the field and a turn row on the other where the trucks parked to receive the wheat when the bin on the combine became full. The testimony indicates that the capacity of the bin on the combine was such that the bin would hold only that amount cut in one swath of the field and would not make a complete circuit from one side of the field to the other without the bin running over. At the time of the fire approximately one half of the field had been cut, and the truck driven by Leslie was in the field preparatory to unloading the combine which had become filled while still in the middle of the field.

■ Petitioner on the day before the fire had warned defendant to stay out of the field. Defendant himself testified:

"Q. And in stubble that high, there is a very real danger of fire, isn't there, when you drive a truck across it?

"A. I would say that's right.

"Q. And you had as a matter of fact, warned your men not to do this, hadn't you?

"A. Yes, sir.

"Q. And Mr. Thoreson had warned you, the night before this thing happened, to keep those men out of that stubble, hadn't he?

"A. We had thought it wasn't necessary to be out there—not to be out there unnecessarily, I will put it that way.

"Q. Well, he actually told you to keep your men out of that stubble, didn't he?

"A. I wouldn't swear that he particularly told me that. We did talk about the stubble, about the fire.

"* * *

"Q. And you were concerned because you didn't want to have a fire?

"A. I did not.

"Q. And he was complaining, in particular about Mr. Leslie, was he not?

"A. Mr. Leslie drove down in there and started to follow the combine, and I stopped him and turned him around. It was unnecessary to following the combine through the field.

"Q. That was the day before it happened?

"A. That was the evening before."

The testimony of plaintiff was of like tenor.

"Q. All right. What did he do with the boy?

"*    *    *    *    *    *

"A. Well, he, in a round-about way, just told him to stay out of the field.

"Q. Well, what did you tell Mr. Thompson, exactly, about the trucks going into the field, if anything?

"A. That we was going to have to keep these trucks out of them fields or we was going to catch them on fire."

It is clear then that defendant knew of the risk involved in driving a truck in the wheat field. He was warned of the danger and he acknowledged this warning by both his testimony and by his conduct, telling Leslie not to drive in the field. This evidence has probative value of the negligence itself and is not merely evidence of foreseeability of harm as part of the proximate cause determination. See Rudes v. Gottschalk, 159 Tex. 552, 324 S.W.2d 201, 206 (1959). Since the risk was known and appreciated, the question remains, what was the conduct of an ordinary prudent person in relation to this knowledge? The answer to it depends on balancing the likelihood of injury, the seriousness of injury if it happens, and the interest which must be sacrificed to avoid the risk. See 2 Harper & James, The Law of Torts, § 16.9 at 929. Is there any evidence of probative value in the record which could substantiate each of these factors and thereby present the jury with evidence upon which it could determine the quality of the conduct? The evidence that the wheat was dry and being harvested is some evidence that if a fire occurred, total consumption of the crop would ensue. Testimony that roads were available at either end of the field, that the combines could be unloaded there without necessitating driving the truck into the field, and that the combine could traverse the field in one direction without filling up the bin is evidence of the degree of inconvenience or delay in unloading a partially filled combine at the turn row. The most difficult question is whether there is any evidence of the quantitative probability of the injury. It is clear, as was recognized by the court of civil appeals, that the fact an accident happens *is* no evidence that there was an unreasonable risk of such an occurrence; because almost any activity involves some risk of

harm. Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195 (1937); see Galveston, H. & S. A. Ry. v. Crier, 45 Tex.Civ. App. 434, 100 S.W. 1177 (1907); Harper & James, supra at 930. When common experience dictates that the risk of injury is high, no direct proof of the quantum of such risk is required. This rule is particularly applicable to cases involving the res ipsa loquitur doctrine. Wichita Falls Traction Co. v. Elliot, 125 Tex. 248, 81 S.W.2d 659 (1935).

However, where common knowledge will not suffice, plaintiff must establish the degree of risk by competent evidence. J. Weingarten, Inc. v. Razey, 426 S.W.2d 538 (Tex.Sup.1968); Stanolind Oil & Gas Co. v. Lambert, 222 S.W.2d 125 (Tex.Civ.App.1949, no writ history). The evidence herein logically relevant to the risk of driving a truck into the field is circumstantial. In essence it consists of the fact that on the day preceding the accident defendant was warned of the risk, and that pursuant to that warning he instructed his employee to stay out of the field unnecessarily. We hold that these facts constitute some evidence that the risk of fire was enhanced by the presence of a truck in the wheat field. The inferences logically to be drawn from this evidence and the determination of the quality of defendant's conduct in relation thereto were for the jury subject to review as to factual sufficiency by the court of civil appeals. Houston Oxygen Co. v. Davis, 139 Tex. 1, 161 S.W.2d 474, 140 A.L.R. 868 (1942). See also Annot., 125 A.L.R. 645 (1940); 29 Am.Jur.2d Evidence, § 357 (1967); 65A C.J.S. Negligence § 233 (1966); Chamberlayne, The Modern Law of Evidence § 2666 (1913).

We now consider the correctness of the holding of the court of civil appeals that there was no evidence of probative force that would support the jury's finding of proximate cause. The trial court in its charge defined proximate cause as "a cause without which the event would not have occurred" and one that "would have been

reasonably anticipated \* \* \* by a person of ordinary prudence. \* \* \*" From the evidence of negligence detailed above, it is clear that the jury could reasonably have determined that defendant-combiner knew or should have foreseen the incineration of the wheat by driving the truck in the field. It is apparent then that the court of civil appeals determined that there was no evidence that this negligence was a cause in fact of the fire. Texas & Pacific Ry. Co. v. McCleery, 418 S.W.2d 494 (1967 Tex.Sup.) This ratio decidendi is further made manifest by respondent's contention in that court that the explosion of the truck caused the fire and that there was no evidence that the act of driving caused the explosion. The court of civil appeals stated that the manner in which the fire started was pure speculation. Petitioner concedes that there is no witness who could testify that he saw a spark leave the exhaust, the hot manifold resting against a stalk, or an electrical short which might have caused the fire, and hence concedes that there is no evidence of the exact mechanical manner in which the fire started. Petitioner contends, however, that there was circumstantial evidence from which the jury might reasonably infer that the presence of the truck ignited the wheat and that this ignition and ensuing explosion and conflagration were the direct results therefrom. Leslie, the driver, did not testify at the trial and his whereabouts were not known by petitioner.

The evidence which substantiates the merit of petitioner's contention follows: On direct examination, as an adverse witness, respondent testified:

"Q. Now, this was Mr. R. J. Leslie, was it not?

"A. Yes, sir.

"Q. Who is the man whose truck actually caught the field on fire?

"A. Yes, sir. That's right.

" \* \* \*

"Q. And the very next day, he went into this field and his truck started this fire, didn't it?

"A. Yes, sir."

Petitioner testified that he was approximately 200 yards away from the field when the fire started. His narration of the event is as follows:

"Q. Well, are you saying you saw something?

"A. Yes. I seen the smoke, and I stopped—the best I remember, I stopped, and I seen this combine take off, and then the truck blew up.

" \* \* \*

"Q. All right. Tell the jury just exactly what you saw and the sequence in which you saw it?

"A. Well, I stopped and I seen it was a-fire when I seen the smoke.

"Q. What was a-fire?

"A. This truck. \* \* \*

" \* \* \*

"Q. Could you tell by observing where the fire started:

"A. It started at the truck.

"Q. Started under the truck?

"A. Yes.

"Q. Was the truck ever moved?

"A. No.

"Q. From the place the fire started?

"A. No.

"Q. Was the truck driver hurt, \* \* ?

"A. No."

On cross examination petitioner again described the event.

"A. Well, I seen this smoke, and I seen this combine pull away, and just about the time then the explosion happened.

"*  *  *

"Q. Now, do you remember when we took your deposition * * *

"A. Yes.

"Q. Do you remember me asking you [the same question to which you answered] Answer: 'I just seen a blast and dirt fly and the combine take off, and that was it.'

"*  *  *

"Q. So the answer is, that without getting into any speculation and so forth, you just don't know what caused that truck to explode, do you?

"A. Well, I seen the smoke and seen it explode.

"Q. Well, in your deposition here, you don't say anything about seeing smoke before you see an explosion, do you?

"A. Well, I don't think he asked me that."

In determining if plaintiff has established a prima facie case on the issue of causation, we note at the outset that "proof of the origin and the cause of this fire, as in the case in most fires, was dependent upon circumstantial evidence." Sharpe v. Munoz, 256 S.W.2d 890 (Tex.Civ.App. 1953, writ ref'd n. r. e.); Montgomery Ward & Co. v. Sharrenbeck, 146 Tex. 153, 204 S.W.2d 508 (1947). The direct evidence of the origin itself is in most instances destroyed. However, this Court has heretofore affirmed that broad latitude should be allowed to jurors to infer proximate cause from the circumstances surrounding an accident. J. Weingarten, Inc. v. Brockman, 134 Tex. 451, 135 S.W.2d 698 (1940).

■ We conclude then that the testimony by petitioner that prior to the explosion smoke emanated from underneath the truck and his testimony that the truck driver, Leslie, escaped injury, in conjunction with the statement on the stand by the respondent that it was Leslie's truck which started the fire, constituted some evidence from which the jury could reasonably infer that the contact of the truck and the stubble was the cause in fact of the whole conflagration. "To reach a contrary conclusion we would be required to find that there was such an absence of evidence showing negligence and proximate cause arising therefrom that reasonable minds could not differ as to the conclusion to be reached. [Authorities omitted.] This we cannot do." Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 621, 23 A.L.R.2d 1114 (1951). A contrary holding "would impose upon [the plaintiffs] the burden of establishing their case beyond a reasonable doubt." Burlington-Rock Island R. Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723 (1943).

■ Since the respondent had points before the court of civil appeals which challenged the sufficiency of the evidence to support the jury's findings, and since it sustained respondent's "no evidence" points, the cause must be remanded to the district court for retrial. Barker v. Coastal Builders, 153 Tex. 540, 271 S.W.2d 798 (1954); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L. Rev. 361 (1960).

Petitioner presents one final point of error which our judgment of reversal and remand requires us to discuss. By this point petitioner contends that respondent's plea in abatement for failure to join petitioner's fire insurance carrier was properly overruled by the trial court and that the court of civil appeals erred in its holding to the contrary. The facts concerning this point are fully outlined by the opinion of the court of civil appeals from which we quote.

"* * * In his deposition, appellee stated he had fire insurance on the wheat which was destroyed, but on instruction from counsel declined to reveal the name of the insurance company and the amount paid to him. Upon a hearing on the mo-

tion, outside the hearing of the jury, appellee testified for the first time that his insurance carrier was The Farm Bureau and that the carrier had in fact paid appellee $20.00 per acre for 90 acres of wheat or a total of $1800.00 for the loss he had sustained. The insurance policy was not available and appellee's counsel refused to stipulate the policy contained a standard subrogation clause. Nothing in this record shows the insurance company was represented in this cause or that appellee was bringing the suit on behalf of the company to any extent. It is not shown the insurance company had notice of the suit nor does the judgment provide for any recovery by the said company."

The order by the trial court overruling the plea in abatement recited that it was timely presented to the court prior to defendant's announcement of ready. Therefore the action of that court cannot be sustained under Tex.R.Civ.Proc. 37, which provides for the joinder of parties "but not at a time nor in a manner to unreasonably delay the trial of the case."

■ We have concluded that plaintiff's insurer was a necessary party under Tex.R.Civ.P. 39, and that the court of civil appeals was correct in so holding. By paying part of plaintiff's loss, its insurer, Texas Farm Bureau, became a pro tanto owner of the cause of action. International Ins. Co. v. Medical Professional Bldg. of Corpus Christi, 405 S.W.2d 867 (Tex.Civ.App.1966, writ ref'd n. r. e.); 6 Appleman, Insurance Law, § 4051 (1942). The payment itself creates this right and need not be expressed in the insurance contract. Wichita City Lines, Inc. v. Puckett, 156 Tex. 456, 295 S.W.2d 894 (1956). It is apparent then, that plaintiff's insurer should have been joined as a party plaintiff. See Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891 (Tex.Sup. 1966).

The judgment of the court of civil appeals is reversed and the cause is remanded for new trial not inconsistent with this opinion.

Dissenting opinion by GRIFFIN, J., in which GREENHILL, J., joins.

## DISSENTING OPINION

GRIFFIN, Justice.

The liability of the defendant is not cast upon the doctrine of res ipsa loquitur. That doctrine was not pleaded or relied upon. Neither is liability founded upon admissions against interest. The plaintiff relied upon negligence. The fact that the fire occurred in the vicinity of the defendant's truck is not proof of any act of negligence on the defendant's part. I therefore agree with the opinion of the Court of Civil Appeals. 423 S.W.2d 175.

GREENHILL, J., joins in this dissent.